THE FIRST NATIONAL BANK OF DAVENPORT V. DAVIES.

I. — Per DAY, J., ADAMS, J., CONCURRING.

1. **Corporations:** FILING OF ARTICLES WITH SECRETARY OF STATE. The statute requiring that corporations should file a copy of their articles in the office of the Secretary of State within three months from the time of commencing business is mandatory, and a compliance therewith is necessary to the validity of the corporation.

2. ———: ———: LIABILITY OF MEMBERS. A failure to file the articles as required by statute subjects the individual property of the members to liability for the corporate debts.

II. — Per DAY, J., SEEVERS, CH. J., and ROTHROCK, J., CONCURRING.

3. ———: WHAT IS A RAILWAY COMPANY. The Davenport Railway Construction Company, organized for the purpose of furnishing materials for, building and equipping railways, is a railway corporation within the meaning of the statute, exempting stockholders from liability beyond the amount of their stock.

III. — Per BECK, J., SEEVERS, CH. J., and ROTHROCK, J., CONCURRING.

4. ———: FILING OF ARTICLES: LIABILITY OF STOCKHOLDERS. The filing of articles of incorporation in the office of the Secretary of State is not essential to the validity of a corporation, nor will a failure to file them render the private property of stockholders liable for the debts of the corporation.

   *Argument* 1. Such filing does not give publicity to the articles.

   *Argument* 2. If required by the statute, corporations might have a valid existence for three months, after which time all their acts would be void.

   *Argument* 3. The word "doings" in the statute cannot relate to the organization, since it may organize and have a valid existence for three months. Stockholders are only liable when there is a failure in complying with the requirements respecting organization.

IV. — Per BECK, J., ADAMS, J., CONCURRING.

5. ———: WHAT IS NOT A RAILWAY COMPANY. A company organized simply for the purpose of *constructing* a railway, and not for the purpose of owning and operating it also, is not a railway company as contemplated by the statute

*Appeal from Scott Circuit Court.*

MONDAY, JUNE 12.

ON the 29th day of July, 1874, the plaintiff filed a petition as follows: "That John L. Davies, in his lifetime, became a member of and a stockholder in the Davenport Railway Construction Company, a corporation organized for pecuniary profit, under the provisions of Chapter 52, Revision of 1860, and the statutes passed since that time supplemental thereto and amendatory thereof, and was a member of said corporation at the time of his death; and, as appears from a list of the stockholders of said company, furnished by the secretary thereof, is now a member or stockholder thereof; that said Railway Construction Company pretends to be a corporation organized under the laws of Iowa; that it has not complied with the laws, so as to be a corporation, in the following respects: It did not file its articles of incorporation in the office of the Secretary of State in the three months after said articles were filed in the office of the recorder of deeds of Scott county, Iowa, in which county its principal place of business was to be, nor were said articles so filed at the time of bringing this suit; that a copy of the by-laws of the said pretended incorporation, with the names of its officers appended thereto, was not posted in its principal place of business, subject to public inspection; nor have they ever been filed in the office of the Secretary of State at Des Moines; that a statement of the capital stock subscribed, the amount of capital stock paid in, and the amount of the indebtedness of the company in a general way, was not posted up in its principal place of business; that said pretended corporation did not, in its inception and early organization, give that publicity to its acts required by law, to exempt the private property of its members from the liability to pay the debts of the corporation; that said Railway Construction Company filed its articles of incorporation in the office of the recorder of deeds of Scott county, Iowa, on the 17th of May, 1871, and by the terms thereof was to last for ten years from the 12th of May,

1871; that on the 5th of May, 1874, your petitioner recovered judgment in the District Court of Scott county, against said Railway Construction Company, on certain bills of exchange, accepted by it and owned by petitioner, for the sum of $15,479.17, and costs $9.56, which judgment is in full force and wholly unpaid; that at the time said bills were accepted by said company, John L. Davies was one of its members and stockholders, and is now such stockholder, as appears by the books of the company; that the business of the said John L. Davies has been kept alive by an order of this court and the said L. S. Davies authorized to carry on the same, which he is now doing; that an execution was on the 16th of May, 1874, issued on  said judgment, directed to the sheriff of Scott county, which execution has been returned by the said sheriff with the following indorsement: 'That a demand was made of J. W. Brown, the officer in charge of the affairs of the said Railway Construction Company, on the 17th of May, 1874, in the city of Davenport, Scott county, Iowa, for property of said company on which to levy, and that said officer failed to point out any property of said company on which to levy, and I, after diligent search have been unable to find any, and I therefore return this execution, no property found on which to levy the same;' that there is now due to petitioner on said judgment from the estate of the said John L. Davies, deceased, the sum of $15,694.84, which claim is annexed and made a part of the petition; that the said Ludwig S. Davies was on the —— day of April, 1872, duly appointed administrator of the estate of the said John L. Davies, and is now such administrator. Your petitioner therefore asks that said claim for the amount last above named be allowed, and that the said L. S. Davies be ordered to pay the same according to law."

An amendment to the petition alleges that on the 11th of August, 1871, there was published in the Daily Gazette a notice of incorporation of the Davenport Railway Construction Company, and that said notice was afterward, on the 16th, 23rd, and 30th of August, and on the 6th of September, published in the Weekly Gazette; but that the notice, a copy of

which is attached to the petition, is not a compliance with sections 1154 and 1155 of the Revision of 1860. To this amendment is attached a copy of the articles of incorporation of said company.

A further amendment to the petition alleges that John L. Davies died on the 3d day of March, 1872, and that Ludwig S. Davies was appointed administrator of his estate on the 4th day of April, 1872; that plaintiff did not file its claim against the estate within eighteen months after the administrator gave notice of his appointment, because the claim had not then accrued.

The defendant's demurrer to this petition, presenting ten distinct grounds of objection, was sustained. Plaintiff appeals.

*James Grant* and *C. Whitaker*, for appellant.

When the statute requires a thing to be done at a certain time and in a certain manner, and imposes a penalty for the non-doing of the act, a failure to comply with the statute renders the act absolutely void. (*Gye v. Felton*, 4 Taunton, 866.) When the statute · prohibits one thing until another has been done, the prohibition cannot be disregarded without judicial legislation. (*Stayton v. Hulings*, 7 Ind., 144.) If negative words are used, or the language implies a negative, the act must be done in the manner pointed out by the legislature, and not otherwise. (Cooley on Const. Lim., 78.) Though the language of the statute is simply enabling, yet if it confers a power which concerns the public as well as individuals, it is not merely permissible but mandatory. (*Inhabitants of Veazie v. Inhabitants of China*, 50 Me., 518; *People v. Supervisors*, 11 Abbott, 114.) A statute is never directory in which negative words are used or negative ideas expressed. (Cooley on Const. Lim., 78; *District Township v. Dubuque*, 7 Iowa, 284.) A failure to comply with sections 1154–5 of the Revision has been held to render stockholders liable. (*McKellar v. Stout*, 14 Iowa, 359.) When a stockholder dies his estate succeeds him in the title to and rights in the stock, and it is subject to any liability existing

or accruing thereon. (*Bailey v. Hollister*, 26 N. Y., 112.) To avoid liability, the estate must cease to be a holder. (*Id.*) When the provisions of the statute respecting organization have been disregarded, the act of incorporation is void. (*Union Horse Shoe Works v. Lewis*, 1 Abbott C. C., 518; *Spencer, Field & Co. v. Crooks*, 16 La. An., 153; *Hurt v. Salisbury*, 55 Mo., 310.

*Davison & Lane*, for appellee.

A railway construction company is a railway company within the meaning of the statute. It has power to condemn land for right of way. (*C. N. & S. R. Co. v. Newton*, 36 Iowa, 304.) The existence of a corporation can alone be inquired into in a direct proceeding by the State. (Angel & Ames on Corp., § 94; *Backus v. Baker*, 32 Ill., 79; *Palmer v. Lawrence*, 3 Sandf., 161; *Bank v. Remick*, 15 Ohio, 222; *Franklin v. Twogood*, 18 Iowa, 575; *Sturgess v. Knapp*, 31 Vt., 1.) The filing of the certificate in the office of the Secretary of State has been held merely directory. (*Stone v. The Gt. West. Oil Co.*, 41 Ill., 85.) The liability for failure to comply substantially with the requisitions as to organization and publicity is a penalty and must be strictly construed. (*Knowlton v. Ackley*, 8 Cush., 96; *Gray v. Coffin*, 9 Id., 192; *Garrison v. Howe*, 17 N. Y., 458; *Merchant's Bank v. Bliss*, 35 Id., 412.) The liability for failure under Sec. 1068 of the Code is only of the individual property of the stockholders. It is not a personal liability upon which a personal judgment can be rendered. (*Bailey v. Dubuque W. R. Co.*, 13 Iowa, 97; *Dodworth & Behan v. Coolbaugh*, 5 Id., 300; *Hampson v. Weare*, 4 Id., 13.) The stockholder is a principal debtor to the extent of his unpaid installments of stock. (*Harper v. McCullough*, 2 Denio, 119.) Where the provision for the liability of the stockholder is coupled with a provision for a special remedy, that remedy alone must be pursued. (*Pollard v. Bailey*, 20 Wal., 520.) The penal liability is not a debt and cannot be proved against the assignee of the stockholder. (*Kelton v. Phillips*, 3 Met., 61; *Leland v. Marsh*, 16 Mass., 389; *Merchant's Bank v. Bliss*, 45 N. Y., 412.)

It is not a liability that survives against the estate of the stockholder in the hands of the executor, although it may be commenced before his death. (*Dane v. M'f'g. Co.*, 14 Gray, 488; *Child v. Coffin*, 17 Mass., 64; *Ripley v. Sampson*, 10 Pick., 370; *Bacon v. Pomeroy*, 104 Mass., 577.)

DAY, J.—The petition alleges, and the demurrer admits, that the Davenport Railway Construction Company did not file its articles of incorporation in the office of the Secretary

1. CORPORA-
TIONS: filing
of articles
with secre-
tary of state.

of State, within three months after said articles were filed in the office of the recorder of deeds of Scott county, and that said articles were not so filed at the time of the commencement of this suit. The articles of incorporation in question were filed in the office of the recorder of deeds, on the 17th day of May, 1871.

The law in force at that time, Revision, section 1152, as amended by chapter 172, laws 1870, provides:

"Previous to commencing any business except that of their own organization they must adopt articles of incorporation, which must be recorded in the office of the recorder of deeds of the county where the principal place of business is to be, in a book kept therefor, and in the office of the Secretary of State, in a book kept for that purpose." Section 1156, as amended by the same chapter, is as follows:

"The corporation may commence business as soon as the articles are filed in the office of the recorder of deeds, and their doings shall be valid if the publication in a newspaper is made, and the copy filed in the office of the Secretary of State, within three months from such filing in the recorder's office."

From these sections taken together, the conclusion is inevitable that the filing of a copy of the articles of incorporation in the office of the Secretary of State is necessary to the valid creation of an incorporation. The language of section 1152 is mandatory and not simply directory. It implies a negation of the right to enter upon any business except that of organization, before doing the things directed. Previous to entering upon any business they must adopt articles of incorporation

which must be recorded in the office of the recorder of deeds, and in the office of the Secretary of State. The recording in the office of the Secretary of State is as imperatively required, and is, by this section, as amended, made just as necessary, as the recording in the office of the recorder of deeds. True, this section is somewhat modified and limited by section 1156. But the limitation and the modification only show more conclusively the imperative nature of the requirements contained in section 1152. Section 1156 provides that the corporation may commence doing business as soon as the articles are filed in the office of the recorder of deeds. . If this section stopped here, it would clearly show that the filing with the Secretary of State is not necessary to the legal transaction of business, nor to the valid existence of the corporation. But this section goes further, and provides that its doings shall be valid if the copy of the articles of incorporation is filed in the office of the Secretary of State, within three months from the filing in the recorder's office. This is equivalent to saying that the corporation may commence business, but its doings shall not be valid, unless the copy of the articles of incorporation is filed in the office of the secretary, as directed.

The use of this negative form of expression indicates the mandatory character of the statute. Cooley on Constitutional Limitations, 75, and cases cited; *The District Township of the City of Dubuque v. The City of Dubuque*, 7 Iowa, 262 (284); *Dishon v. Smith*, 10 Iowa, 212 (218). As there was a failure to observe this essential requirement in the formation of an incorporation, we need not notice the other defects complained of.

II. An essential requisite in the formation of the corporation having been omitted, it remains to be seen in what manner the omission affects the stockholders. Section 2. ——: ——: liability of stockholders. 1166 of the Revision provides: "A failure to comply substantially with the forgoing requisitions in relation to organization and publicity renders the individual property of all the stockholders liable for the corporate debts."

It would be difficult to determine what would be a failure to comply substantially with the requisitions in relation to

organization, if the neglect to do the things upon which the validity of the act of the corporation depends is not such a failure. In *McKellar v. Stout*, 14 Iowa, 359, respecting the section in question it is said: "The prime object of this requirement is to make individual corporators liable for the failure to do those things which are necessary to the transaction of business."

In fact we understand the appellee to concede that, if the filing of a copy of the articles of incorporation in the office of the Secretary of State is necessary to the valid transaction of business, a failure to do so is a failure in such substantial respect as, under this section, will render the individual property of the stockholders liable for the corporate debts. From the argument of appellee we quote the following: "At common law, if there was no corporate existence, each would be liable as a partner for all the debts. Did the legislature intend to declare anything more by this section than that a failure to comply substantially with the requisitions for giving a legal corporate existence as to third persons, would render the stockholders liable for all the debts, the same as if there was *no corporation?* This seems to us to be the plain meaning and intent of the statute."

We see no real objection to this construction of the statute by appellee's counsel. It is in harmony with the views expressed in *McKellar v. Stout, supra*, and does violence to none of the language of the statute. But, accepting this as the correct construction, we feel impelled to hold that the omission complained of falls within the provisions of the statute and renders the individual property of the stockholders liable.

III. Section 1338 of the Revision provides: "That section number six hundred and eighty nine of the Code (1166 of the Revision), shall not be deemed and construed to be applicable to railroad corporations and corporators, and stockholders in railroad companies shall be liable only for the amount of stock held by them in said companies." The proper construction of this section becomes important.

It is claimed by appellant, that this section does not entirely

take away the liability of a stockholder in a railroad corporation for the corporate debts, on account of the failure of the corporation to comply substantially with the provisions respecting organization, but that it limits this liability to the amount of the capital stock held by him. This construction we believe to be untenable. The section declares that section 1166 shall not be deemed and construed to be applicable to railroad corporations. But if a failure to comply with the provisions as to organization renders a stockholder in a railroad corporation liable to the amount of the capital stock which he holds, then section 1166 does apply to such corporation, and the only change which section 1338 effects is a modification or limitation of its application, placing the first and the last part of the section in direct opposition to each other. This result should be avoided if it can be done reasonably. Section 1172 of the Revision provides: "Nothing herein contained exempts the stockholders of any corporation from individual liability to the amount of the unpaid installments on the stock owned by them, or transferred by them for the purpose of defrauding creditors, and an execution against the company may to that extent be levied upon such private property of any individual." We think it is this liability which is referred to in the concluding part of section 1338, and not any liability enacted by section 1166, which the former part of section 1338 declares shall not apply to railroad corporations. This construction is rendered necessary by the language of the section. It provides that stockholders in railroad corporations shall be liable only for the amount of stock held by them. If the stock is paid for, it may be reached by process against the corporation. If it is not paid for the holder of it is liable, and execution against the company may be levied upon his private property under section 1172. In either case he is made liable for the amount of the stock which he holds. But if, as appellant insists, section 1338 admits of a liability to the extent of the amount of stock held by a stockholder because of the provisions of section 1166, such stockholder might be liable for twice the amount of stock held by him; liable once for the amount of

his stock through process against the corporation, and liable again to the same extent through execution levied upon his private property. The section is not fairly susceptible of a construction which might create this double liability.

IV. It remains to be considered whether a stockholder in the Davenport Railway Construction Company is entitled to the benefits of the provisions of section 1338. The articles of incorporation declare that the corporation shall be known as the Davenport Railway Construction Company, and that the business to be transacted shall be furnishing materials for, and the building, making and equipment of railroads in the State of Iowa, and all proper extensions of the same in adjoining States. That there can be a railroad company which does nothing but construct the road, and a railroad company which does nothing but operate the constructed road, cannot be doubted. It is not essential to the idea of a railroad company that it should both construct and operate a railway. The words constructing and operating, constructing or operating, and constructing simply, are applied to railway corporations in the statute. See Code of 1873, sections 1273, 1288 and 1277. Section 1277 provides: "Any such corporation organized for the purpose of constructing a railway," etc. Section 1338 was evidently intended to encourage and facilitate the construction of railroads. These improvements require the expenditure of such vast sums, that no private fortune would be adequate to the payment of the debts which are often incurred. No one would be likely to be willing to become a stockholder in such a corporation, if a failure to properly effect the corporate organization might render him individually liable for all the corporate debts. As the principal debts are contracted in the construction of railways, a company organized for such construction comes clearly within the reason and spirit of the provisions of the section above considered.

The principal objection, which occurs to us, to allowing the benefits of that section to the defendant, lies in the fact that the Davenport Railway Construction Company was organized for the purpose of constructing railroads generally, and not

for the purpose of building any particular road. It cannot be doubted, we suppose, that one company may do nothing but locate the line and procure the right of way; another may do nothing but construct, and a third may do nothing but operate the constructed road. If one company has located a line and procured the right of way, another company may, we think, be organized for constructing the road. And, if so, we see no valid reason why a company may not be organized for the purpose of constructing several roads which have located their lines and procured the right of way. And, if this can be done, it would seem that a railway company may be organized for the purpose of constructing railroads generally. Of course, when this is done, particular organizations must also exist for the purpose of locating the line and procuring the right of way.

We hold, though not without hesitation and doubt, that the Davenport Railway Construction Company so far partakes of the nature of a railway corporation, and is so far within the spirit of section 1388, that a stockholder in said construction company is entitled to the benefits of the provisions of this section. It follows from this view that the judgment must be

AFFIRMED.

BECK, J.—I concur in the conclusion announced in the foregoing opinion, affirming the judgment of the Circuit Court, but I am not prepared to assent to the grounds upon which it is based. Upon the points discussed in Mr. Justice DAY's opinion I have very grave doubts; indeed, I may say, these doubts almost amount to conviction in my present state of mind, that the conclusion of the opinion upon the last point discussed is not correct. I cannot assent to the proposition that a corporation, organized for the purpose alone of constructing a railroad, is a railroad company as contemplated by the statutes in question.

My doubts upon the questions involving the effect of the failure to comply with the law in the organization of the company—the omission to file the articles of incorporation in the office of the Secretary of State within the time prescribed

by the statute, are in my opinion so well founded that I can-not assent to the conclusion upon this point reached by the other members of the court. The fact that the views I now entertain lead to the same conclusion reached by my brothers resulting in the affirmance of the judgment, restrains me from an attempt to discuss the questions involved in the case.

### ON REHEARING.

BECK, J.—A rehearing was granted in this case and it has been again argued and submitted for our consideration. While we do not all concur in our conclusions, we all unite in holding that the judgment of the court below must be affirmed. I will proceed to state the views I entertain upon the questions necessary to be determined, after having given them a careful reconsideration, and will indicate the concurrence, or dissent thereto, of the other members of the court.

I. I believe it is conceded on all hands that the defects set out in plaintiff's petition, relating to the organization of the Construction Company, will not render defendant liable, unless it be the failure to file the articles of incorporation in the office of the Secretary of State. Two sections of the statute bear upon the question involving the effect of this omission, namely 1166 and 1156 of the Revision.

*4. ——— : filing of articles: liability of stockholders.*

The section last named provides that a failure to comply substantially with the foregoing requisitions, in relation to organization and publicity, renders the individual property of all the stockholders liable for the corporate debts. It is not claimed that the filing of the articles of incorporation in the office of the Secretary of State pertains to the organization of the company. It clearly appears that the same act does not pertain to the publicity to be given to the fact of organization.

It cannot be claimed that notice—*publicity*, of any matter is given by instruments and documents filed in the office of the Secretary of State. I am unable to call to mind a single instance where notice, required by the laws of property or contracts, is imparted by documents filed in that office. Prac-

tically, the filing of articles of incorporation in the Secretary's office, required by the statute, imparts no publicity, for no man will seek knowledge of the existence of a corporation there. I conclude, therefore, that the omission to deposit the articles of incorporation in the office of the Secretary of State is not contemplated by § 1166.

Nowhere in the statute is any other provision found for rendering a stockholder liable for the debts of the corporation. The statute provides that private property may be exempted from liability for corporate debts, except as therein otherwise provided. § 1150, ¶ 5. Let this be kept in mind.

I come now to the consideration of section 1156. It provides that the "doings" of a corporation shall be valid if a copy of the articles of association be "filed in the office of the Secretary of State within three months."

It would certainly be a harsh, oppressive and unreasonable rule of law which would permit a corporation to exist legally and do lawful acts up to a certain time, and after that all their past and future acts would be void, because of failure to do certain prescribed acts. What good would come of such a law? The gross hardships and injustice that would be wrought are apparent to all. We ought to put no such construction upon a statute, unless compelled thereto by its plain, unmistakable language. In the construction of statutes courts must seek for a legislative intention consistent with justice and right. It would be a strange rule of law indeed, which would hold a corporation to exist, to be in the exercise of its franchises, and yet regard its acts void, because of some irregularity or illegality in the omission of an act to be done after its organization.

I will now inquire if, for the omission of the Construction Company to file its charter with the Secretary of State, it ceased to be a corporation—was deprived of its franchises without proceedings instituted for that purpose.

Rev., § 1180, provides that, "persons acting as a corporation under the provisions of this chapter, will be presumed to be legally incorporated until the contrary is shown, and no

such franchise shall. be declared actually null or forfeited, except in regular proceedings brought for that purpose."

Now the persons composing the Construction Company "are acting as a corporation." Under this statute they are to all intents a corporation in contemplation of law until their franchise is taken away; this has never been done. How can it be said that the stockholders are no longer a corporation, but are liable as partners? The position is utterly untenable.

III. The foregoing consideration, in my judgment, disposes of this point of the case; but there is another view which, in my opinion, is just as conclusive.

I have already called attention to the fact that stockholders are personally liable under the statutes in one case only, namely, where there is a failure to comply substantially with the requirements of § 1166 in regard to organization and publicity.

. Now, suppose it to be admitted that the acts of this corporation for the irregularity shown, viz., the failure to file the articles of association in the office of the Secretary of State, are invalid, where do we find authority for holding that, on account of such irregularities, the stockholders are individually liable?

It is said that their "doings"—their acts of organization, are invalid and they are no longer a corporation, and are liable as co-partners. But § 1180 provides that they shall be a corporation until dissolved; the position, therefore, conflicts with this section. The word "doings," therefore, cannot relate to their acts of organization. If it be other acts that are void, and it must be, then the stockholders are not liable, for the corporation still exists and there is no statute that makes them liable except for failure to comply with the requirements relating to publicity of the organization and to the organization itself.

SEEVERS, CH. J., and ROTHROCK, J., concur in the foregoing conclusions; DAY and ADAMS, J. J., do not.

IV. I am fully persuaded that the Construction Company is not a corporation of the character contemplated in Sec. 1338 of the Revision, and I base my conclusion upon these grounds:

5. ——: what is not a rail- way.

1. The language of the statute does not admit of applica-
tion to the Construction Company of which defendant is a
stockholder. I never heard the term railroad company applied
to organizations called construction companies. I am sure
that not a man in the state would understand me if I should
use the expression railroad company to designate a construction
company. Railroad corporations are understood to be com-
mon carriers, corporations who build, own, and operate rail-
roads. But it is said a railroad company may build a railroad
and yet never operate it. Yes, it may go into bankruptcy
before it completes its road, or for some other reason it may
never accomplish the design of its organization, which was to
become an owner of a railroad and a common carrier. It may
lease its road, but it would accomplish one purpose of its
organization in that way.

I believe that, at the date of the enactment in question,
1858, there was not a railroad construction company in this
state. Surely the legislature, in using the term railroad com-
pany, did not intend to describe a corporation of a character
wholly unknown to the people of the state.

The very name of the corporation in question indicates its
true character and is descriptive of the objects and purposes
of its organization.

The fact that the charter of the corporation permits it to
own lands is no foundation for an argument against the view
I take, but in fact rather supports it. Railroad companies
necessarily need not own one foot of land; all they need is an
easement upon land—the right to occupy it as long as they
continue to discharge the duties of common carriers; they
may condemn land for such purpose. Rev., § 1314. The con-
struction company could not condemn land whereon to build
shops, for the construction of bridges, for rolling iron, or to
erect stables for its horses or boarding-houses for its employes.
They ought, therefore, to have power to purchase land, which
is given in its charter.

Neither does the fact that the construction company under
its articles of association may own a railroad, make it a rail-
road company. Many banks have authority under their char-

ters to acquire by purchase property of all kinds, and others can acquire whatever property it becomes necessary to take in order to secure debts. Under these powers they would have the right to purchase and acquire railroads. Surely they would not be called, because of these powers, railroad companies.

The difference between a railroad company and the Railroad Construction Company whose character we have been considering is this: The first is organized to build, own, and operate railroads; the second, to build railroads for the first.

ADAMS, J., concurs in the conclusions reached upon this point; the other justices do not.

DAY, J., adheres to the conclusion expressed in his opinion heretofore filed in this case.

The decision announced in the first opinion filed in this case is adhered to and the judgment of the court below stands.

AFFIRMED.