UNION TRUST & SAVINGS BANK OF AMES, Appellant, v. BLAIR-HARPER SEED COMPANY et al., Appellees.

**CORPORATIONS:** Organization—Statement of Allowable Indebted-
1  ness. The highest amount of allowable indebtedness of a corporation is sufficiently stated by articles and by the published notice of incorporation which reveal the maximum and minimum amounts of stock and declare that such indebtedness "shall not exceed two thirds of the amount of the paid-up stock."

**CORPORATIONS:** Organization—Personal Liability of Stockholder Is
2  Penal. Principle reaffirmed that the statutory imposition of personal liability on stockholders for failure to substantially comply with the statute in regard to organization and publicity in the attempt to create a corporation is *penal* and not *contractual*.

**WORDS AND PHRASES:** Elastic Terms. Principle recognized that
3  "may," "must," "shall," and "will," are elastic, and are frequently treated as interchangeable.

Headnote 1: 14 C. J. p. 144. Headnote 2: 14 C. J. p. 980. Headnote 3: 26 Cyc. p. 1590; 28 Cyc. p. 1780; 35 Cyc. pp. 1451, 1452; 40 Cyc. p. 950 (Anno.)

*Appeal from Story District Court.*—E. M. McCALL, Judge.

MARCH 17, 1925.

REHEARING DENIED JUNE 25, 1925.

ACTION at law by the creditor of a corporation against the stockholders thereof. Personal liability is charged against the stockholders under the provisions of Section 1616, Code of 1897, as for the substantial failure of the articles of incorporation and of the publicity thereof, to comply with the requirements of the statute. There was a demurrer to the petition, which was sustained. The plaintiff, electing to stand upon its petition, suffered judgment, from which it has appealed.—*Affirmed.*

*C. H. Pasley* and *J. Y. Luke,* for appellant.

*Struble & Stiger, Lee & Garfield, Charles A. Pratt, C. E.*

*Walters, Deacon, Sargent & Spangler, M. W. O'Reiley, George C. Gorman, H. E. Hadley, Fred E. Hansen, Frank Maher,* and *Healy, Thomas & Healy,* for appellees.

Evans, J.—I. The petition set out the articles of incorporation which are under attack. Articles III and IX thereof are as follows:

### Article III.

"This corporation shall have an authorized capital stock of fifty thousand dollars. Twenty-five thousand dollars of its authorized stock shall be common stock divided into shares of twenty-five dollars, each, and twenty-five thousand dollars of its authorized stock shall be preferred stock divided into shares of twenty-five dollars each. *There may be an original issue of fifteen thousand dollars common stock and fifteen thousand dollars preferred stock, and common stock may be issued in excess of fifteen thousand dollars up to twenty-five thousand dollars, and preferred stock may be issued in excess of fifteen thousand dollars up to twenty-five thousand dollars at any time by order of the board of directors. Preferred stock, however, shall not at any time be issued by the company to an amount in excess of the amount of common stock fully paid for and issued.*"

1. Corporations: organization: statement of allowable indebtedness.

### Article IX.

"The aggregate indebtedness of this corporation shall not exceed two thirds of the amount of the paid-up stock except as authorized by law."

The other articles are not under attack, and they need not be set forth.

Article XI contained the following:

"Every director must be a holder of common stock."

The notice published was a substantial copy of the articles, and contained also the following:

"All stock shall be paid for when issued. The corporation commenced to do business on the 14th day of September, 1918, and will continue for twenty years from said date with the right of renewal and perpetual succession."

The invalidity of this corporation was charged in the petition in the following terms:

"Plaintiff alleges and charges that the said defendants, in adopting the said articles of incorporation and in giving and publishing the said notice, failed and neglected to substantially comply with the requirements of the statutes of the state of Iowa in relation to organization and publicity, and by such failure did there and entirely render their individual property liable for the corporate debts, *in that the said articles of incorporation and said notice did not state: First, the time and condition when said capital stock was to be paid in; second, that any stock whatever was to be issued and paid for at any time; that any stock must be issued and paid for before the commencement of business, or the amount thereof. That the said articles and the said notice did not give the requisite notice and information as to the highest amount of indebtedness to which the corporation might subject itself.*"

The real crux of the charge against the articles and the notice is that they did not substantially set forth the highest amount of indebtedness to which the corporation should be at any time subject, as required by Section 1611, Code of 1897. It will be seen, therefore, that the case turns upon the construction which should be put upon Article III, above quoted. If it can be said, from a fair construction of such article, what the paid-up capital stock of the company was to be at the beginning of its business, then the provision of Article IX would become quite sufficient, as fixing the limit of indebtedness at two thirds of the paid-up stock.

Section 1616, which we must construe in connection with Articles III and IX, is penal in its nature. Its imposition of personal liability upon a stockholder is a penalty, and is not the creation of a contractual liability. We have so held uniformly. *Adler v. Baker-Dodge Theatre Co.,* 190 Iowa 970; *Schumacher v. Sumner Tel. Co.,* 161 Iowa 326; *Seaton v. Grimm,* 110 Iowa 145.

2. CORPORATIONS: organization: personal liability of stockholder is penal.

The statute must be construed, therefore, liberally in favor of the stockholder and against the penalty. The construction of the statute involves a construction of the articles, as respon-

sive thereto. The statute calls, not for literal compliance, but for *"substantial"* compliance. This language of the statute implies a liberal construction of the articles under attack. This is the rule which we have uniformly followed in the few cases wherein liability has been sought against stockholders, under the provisions of this statute. *Seaton v. Grimm,* 110 Iowa 145, at 151; *Brinkley Car Works & Mfg. Co. v. Curfman,* 136 Iowa 476; *Commercial Nat. Bank v. Gilinsky,* 142 Iowa 178; *First Nat. Bank v. Davies,* 43 Iowa 424.

With this rule before us, can it fairly be determined from a reading of Article III what the capital stock of this corporation was to be? In setting forth above a copy of Article III, we have italicized a portion thereof, for convenience of reference. If we look first to the first part of the article not italicized, it discloses clearly that the capital stock of the company was to be $25,000 of common stock and $25,000 of preferred stock. What is the qualifying effect upon the foregoing, of the italicized portion of the article? We think it can fairly be construed to mean that a minimum of $15,000 of common and a minimum of $15,000 of preferred stock will constitute the first or initial issue, and that the corporation will begin its operation upon such issue. Such italicized portion either means this or it means nothing. If it means nothing, the first part of the article stands unqualified. The construction which we thus put upon it does not require a strained liberality. It represents the meaning which the language of the article would most naturally convey to the ordinary person. The appellant lays special stress upon the use of the word *"may."* It will not bear 3. Words and phrases: elastic the load thus put upon it. Such words as terms. "may," "must," "shall," or "will," are often used without clear discrimination. All of them are elastic, and they are frequently treated as interchangeable. We think that the word "may" in this connection does no more than express the purpose and plan of the incorporation to declare an initial issue of $30,000. Some of the omissions complained of by the appellant are expressly provided for by statute. For instance, Section 1641-b, Code Supplement, 1913, provides that there shall be no issue of any capital stock by any corporation "until the corporation has received the par value thereof." It neces-

sarily follows as a presumption that the $30,000 of stock issued by this corporation in its initial issue was paid-up stock.

Section 1625, Code of 1897, is as follows:

"A statement of the amount of capital stock subscribed, the amount of capital actually paid in, and the amount of the indebtedness in a general way, must also be kept posted in like manner, which shall be corrected as often as any material change takes place in relation to any part of the subject-matter thereof."

Presumably the corporation complied with this section. The statement here provided for was not required in the articles of incorporation or in the notice thereof.

As already quoted, the published notice did advise that the corporation had commenced business on September 14, 1918, and, in effect, that all stock issued was paid for. If Article III will fairly bear the construction which we here put upon it, Article IX was a sufficient compliance with the statute. We so held in *Park v. Zwart*, 92 Iowa 37.

There is no claim in this case that the plaintiff was actually misled, or that any elements of estoppel are present. The plaintiff relies wholly upon its absolute right to enforce a statutory penalty. We devote the following division of this opinion to a few excerpts from our previous cases. Some of these bear very closely, in the alleged defects involved therein, upon the case at bar. They all disclose an attitude of leniency toward a mere stockholder, in reference to defects in the original organization. The very purpose of legalizing corporate existence and permitting the issue of corporate shares is that such shares may be sold indiscriminately to many small investors, who often reside in distant localities. Their opportunities for discovering legal defects in the organization of the corporation are often, if not usually, very meager. There is no pressing reason apparent why they should be penalized at all. The opportunities of discovery are quite as available to the creditor as to them. If statutory penalties were applied only to those promoters or organizers who were responsible for the defects, if any, then enforcement of the penalty might call for less leniency in the construction and application of the statute to the particular case.

II. The following excerpts from our previous cases will be a sufficient discussion of the law involved herein: In *Seaton v. Grimm*, 110 Iowa 145, 151, we said:

"The great weight of authority, in the absence of statute, is that, where a supposed corporation is doing business as a *de facto* corporation, the stockholders cannot be held liable as partners, although there have been irregularities, omissions, or mistakes in incorporating or organizing the corporation. Cook, Stock & Stockholders (2d Ed.), Section 234, and cases cited. *And the greater number of cases seem to favor the proposition that statutes such as the one we are now considering are penal in character.* Cochran v. Weichers, 119 N. Y. App. 399 (23 N. E. 803), s. c. 2 Am. Ry. & Corp. Rep. 382, and note; 2 Morawetz Private Corporations, Section 908; *Diversey v. Smith*, 103 Ill. 378; *Globe Pub. Co. v. State Bank of Nebraska at Crete*, 41 Neb. 175 (59 N. W. 683); *Kleckner v. Turk*, 45 Neb. 176 (63 N. W. 469); *Chase v. Curtis*, 113 U. S. 452 (5 Sup. Ct. Rep. 554, 28 L. Ed. 1038). It is not necessary to determine whether the statute in question imposes a penalty, in order to arrive at a decision of the case. We cite the authorities simply to show that the tendency of all modern decisions is to hold that such statutes do not create a contract liability, and that, *but for the statutes, no liability would exist.* With this construction, the way is clear for determining what is a substantial compliance with the statute relating to publicity; for it is a universal rule that penal statutes are to be strictly construed, and all doubts are to be solved in favor of the person from whom recovery is sought. The statute itself says that the members are liable for a failure to comply 'substantially' with the foregoing requisition, etc. As said in *Eisfeld v. Kenworth*, supra, 'It is not denied that the use of that word implies that there may be a failure to comply with the statute which is not a "substantial" failure.' "

In *Park v. Zwart*, 92 Iowa 37, we said:

"The articles published provide as follows: 'The limit of its indebtedness *shall be two thirds of the amount of the capital stock subscribed;*' also, that 'the capital stock of the association shall be ten thousand dollars, divided into shares of fifty dollars each, and shall be issued and paid for in such sums and at such

times as the board of directors may require.' * * * Appellant contends that the limit of indebtedness, as fixed in the articles and published, was not a substantial compliance with the requirements in relation to organization and publicity. He contends that a definite sum should be named, and that to fix 'two thirds of the amount of the capital stock subscribed' as the limit, is indefinite and variable. In *Thornton v. Balcom,* 85 Iowa 198, the articles provided 'that the total indebtedness of this corporation shall not exceed three hundred dollars, except by a majority vote of the stockholders present at a called or annual meeting.' It was contended in that case, as in this, that, as the limit might be changed, it was indefinite and uncertain, and that it must be fixed and stable, and not subject to change. The court says: 'In our opinion it was so fixed, and the fact that it might be changed by an increase or diminution, is no departure from the requirements of the statute.' *The amount of the capital stock subscribed was ascertainable at any time, and thereby the limit definitely known. That it might be changed by additional subscriptions did not render it less definite, and 'is no departure from the requirements of the statute.'* Our conclusion is that there was no failure to comply substantially with the requirements of the statute in relation to organization and publicity, and that the judgment of the district court should be *affirmed.''*

In *Car Works v. Curfman,* 136 Iowa 476, 480, we said:

''And, as substantial compliance only is exacted, it would seem to follow as a necessary corollary that errors, either of omission or commission, which are purely technical in character, and not likely to disturb the general policy of the statute or *work injury to an appreciable extent to anyone dealing with the corporation,* ought not to be given force to charge personal liability upon a stockholder. This view finds direct support in *Seaton v. Grimm,* 110 Iowa 145. In the case before us, the error, if such it was, in the publication of notice, was one purely of omission. *In respect of that portion of the capital stock authorized which it was not presently proposed to issue, the times and conditions of payment were not stated. But we cannot see how plaintiff was in any sense or to any degree prejudiced by this.* The notice given, made known the fact that the

corporation proposed to start business with an issue of $20,000 of capital stock, and no more, and plaintiff contracted with the corporation understandingly on that basis. It is not possible, therefore, that it could have been misled to its injury, because, as to stock not proposed to be issued, and concerning which it was not known that it ever would be issued, there was no statement as to the times and conditions of payment to be enforced, should an issue be determined upon. What would be the situation if there had been an issue of the entire capital stock authorized, or if such was contemplated, we need not stop to inquire.''

In *Thornton v. Balcom,* 85 Iowa 198, 200-203, we said:

''The articles of incorporation recited that 'the total indebtedness of this corporation shall not at any one time exceed three hundred dollars, except by a majority vote of the stockholders present at a called or annual meeting.' It is claimed that this was not a compliance with the law, because it does not fix the amount of indebtedness, but leaves it to be changed by a vote of a majority of the stockholders, whereas by another provision of the articles it is provided that the articles of incorporation cannot be changed except by a two-thirds vote. The argument of counsel for the appellant proceeds upon the theory that the amount of authorized corporate debt must be fixed and stable, and not subject to change. In our opinion it was so fixed, and the fact that it might be changed by an increase or diminution is no departure from the requirements of the statute. The manner in which the change may be effected does not affect the right, and is not a failure to substantially comply with the statutory requirement. * * * The provision in the published notice in regard to the indebtedness is as follows: 'The indebtedness of the company shall not exceed three hundred dollars at any one time.' It is claimed that this is not a true statement of the amount of the authorized indebtedness. It appears to us that it is just such a statement as the law required. It was the amount of indebtedness then authorized, and it was wholly unnecessary to publish the manner in which the limit of indebtedness might thereafter be increased or diminished. * * * The authorized capital stock of the corporation, as shown by the articles of incorporation, was three thousand dollars, in shares of ten dollars each. There was about one thousand dollars of

stock subscribed. The plaintiff claims that the failure to secure three thousand dollars of stock created a personal liability against those who did subscribe. *It is sufficient to say in answer to this position that there is no requirement in the articles of incorporation that all of the stock should be subscribed before commencing business, nor that any definite sum should be subscribed.*"

In *Commercial Nat. Bank v. Gilinsky,* 142 Iowa 178, 180, we said:

"Section 1616 of the Code provides that 'a failure to substantially comply with the foregoing requirements in relation to organization and publicity shall render the individual property of the stockholders liable for the corporate debts.' *The notice was published within the time required, but read that 'the private property of stockholders was exempt from corporate suits,'* and no affidavit of publication appears to have been filed with the secretary of state. The use of the word 'suits' instead of 'debts' in the notice was manifestly by mistake, but we do not think it one fatal to the notice. Anyone in reading the notice could reach no other conclusion than that the stockholders were not to be liable in suits against the corporation or for claims payable by the corporation. This was equivalent to saying that the debts of the corporation might not be enforced against the stockholders. In other words, instead of saying private property would be exempt from corporate debts, it in effect declared an exemption from suits to enforce such debts, which would lead to the same result. Nor do we deem the requirement that affidavit of publication be filed with the secretary of state mandatory. The object of such publication is that parties dealing with the corporation shall be informed of its character, and that it is not a natural person. *Seaton v. Grimm,* 110 Iowa 145."

III. As against the cases quoted from in the foregoing division, the appellant relies upon *Parsons v. Rinard Grain Co.,* 186 Iowa 1017. The cited case is the more recent, and appellant contends that it overrules our prior cases, so far as they seem to support the judgment below. There are expressions quoted by the appellant from such case which, separated from their context, give some ground for appellant's contention. We can-

not, however, accept the appellant's interpretation of that case and of our holding therein. The issue under consideration here was not made in that case. The language relied on by appellant was used in argument on a different issue. The corporation in that case had a by-law which had been legally adopted, whereby the stockholders bound themselves to assessment by the proper officials of the corporation for the purpose of meeting indebtedness. The officials exercised that function, and brought suit to recover the assessments. Several stockholders defended and counterclaimed against the officials, who were plaintiffs, for damages for wrongful and negligent administration of their office, whereby the debts were illegally contracted. They prayed that they recover from the officials, as damages, the full amount of their own liability. The court below denied the counterclaim, and entered judgment against the stockholders for the assessments; and both findings were affirmed here. Certain creditors also intervened in the action, and joined the stockholders as defendants, and asked recovery from the plaintiffs, who were officials, for the amount of their claims, on the ground of maladministration and other grounds. These claims were denied by us. The language in the opinion relied upon by appellant was used in connection with the sustaining of the assessments. It was not necessary to the decision, although it was proper as a discussion of the ground of decision. It did not purport to overrule our previous cases on the subject now before us. Nor, indeed, were such previous cases considered or cited, except that there was an approving reference to *Park v. Zwart*, supra.

It must be said, therefore, that the authority of our previous cases here cited has not been in any manner questioned by us heretofore, and we adhere to them now. That leaves little occasion for further discussion of the questions presented in this case.

We think the trial court properly dismissed the petition, and its judgment is affirmed.—*Affirmed.*

FAVILLE, C. J., and ARTHUR and ALBERT, JJ., concur.