ALLIS–CHALMERS CORPORATION,
Plaintiff,

v.

EMMET COUNTY COUNCIL OF GOVERNMENTS, Defendant,

City of Estherville and Emmet County, Defendants.

No. 83–1618.

Supreme Court of Iowa.

Sept. 19, 1984.

John M. Bickel and Allan W. Vestal of Shuttleworth & Ingersoll, P.C., Cedar Rapids, for plaintiff.

Kendall R. Surfass, Emmet County Atty., for defendant Emmet County.

Maynard M. Mohn of Rosendahl, Forsyth, Mohn & McCay, Estherville, for defendant City of Estherville and for defendant ECCOG.

McCORMICK, Justice.

The United States District Court for the Northern District of Iowa has certified the following question of law pursuant to Iowa Code section 684A.1 (1983): "Whether individual members of a separate entity created pursuant to sections 28E.4 and 28E.5, Code of Iowa, are jointly and severally liable along with said entity upon a written contract entered into only by said separate entity and a third party." The question is framed in the context of governmental units who formed the Emmet County Council of Governments (ECCOG), by entering an agreement under chapter 28E in which they characterized ECCOG as "a public body corporate and politic and separate legal entity." In the context of the certified facts, we give a negative answer to the certified question.

The record upon which we decide the certified question consists of a stipulation of the parties incorporating a copy of the chapter 28E agreement. In relevant part, the stipulation is as follows:

Plaintiff, Allis-Chalmers Corporation (hereinafter "Allis-Chalmers"), is a Delaware Corporation with its principal place of business in West Allis, Wisconsin.

Defendant and Movant, City of Estherville, is a municipal corporation organized

under the laws of the State of Iowa. Defendant and Movant, Emmet County, is a governmental subdivision organized under the laws of the State of Iowa.

Defendant, Emmet County Council of Governments (hereinafter "ECCOG"), was formed pursuant to Chapter 28E, Code of Iowa, by the "Intergovernmental Cooperation Agreement," a copy of which is attached as Exhibit A. Defendants, City of Estherville and Emmet County, are members of the ECCOG.

On August 16, 1974, Allis-Chalmers and the ECCOG entered into a contract for the sale and purchase of an integrated trash shredder system, which contract was subsequently modified by writings dated August 20, 1979, and April 3, 1975. In its complaint, Allis-Chalmers alleges that the contract has been breached, and names as defendants the ECCOG, the City of Estherville and Emmet County.

Both Emmet County and the City of Estherville allege that they are not proper parties to this litigation and that Allis-Chalmers should look solely to the EC-COG for damages, if any, that may be due it.

Allis-Chalmers alleges that the City of Estherville and Emmet County are individually liable under the contract by virtue of their membership in the ECCOG. Allis-Chalmers does not allege that the City of Estherville or Emmet County are liable on any grounds other than their membership in the ECCOG.

The agreement shows that all the members of ECCOG are local governmental units in Emmet County.

The specific contention of City of Estherville and Emmet County is that ECCOG is a public corporation whose members are not liable upon ECCOG contracts. Allis-Chalmers contends that the members of EC-COG are not given limited liability from any source.

Chapter 28E permits state and local governments in Iowa to combine for the stated purposes of "[making] efficient use of their powers by enabling them to provide joint services and facilities with other agencies and to co-operate in other ways of mutual advantage." § 28E.1. Political subdivisions are authorized to exercise their powers jointly. § 28E.3. Section 28E.4 provides:

Any public agency of this state may enter into an agreement with one or more public or private agencies for joint or co-operative action pursuant to the provisions of this chapter, including the creation of a separate entity to carry out the purpose of the agreement. Appropriate action by ordinance, resolution or otherwise pursuant to law of the governing bodies involved shall be necessary before any such agreement may enter into force.

Section 28E.5 provides:

Any such agreement shall specify the following:

1. Its duration.

2. The precise organization, composition and nature of any separate legal or administrative entity created thereby together with the powers delegated thereto, provided such entity may be legally created.

3. Its purpose or purposes.

4. The manner of financing the joint or co-operative undertaking and of establishing and maintaining a budget therefor.

5. The permissible method or methods to be employed in accomplishing the partial or complete termination of the agreement and for disposing of property upon such partial or complete termination.

6. Any other necessary and proper matters.

The agreement entered by the governmental bodies in this case recited that the organization was to be permanent. It also recited that ECCOG "shall be a public body corporate and politic and separate legal entity exercising public and essential governmental functions to provide for the public health, safety and welfare" with numerous specified powers.

Among the powers was the right to sue and be sued, the right to acquire and dispose of property, the right to enter contracts, the right to operate a solid waste disposal and collection service within each member unit, the right to fix and charge fees for its services, the right to establish a budgeting system for ECCOG funds, the right to borrow money and issue bonds, the right to provide for remedies in the event of default, and the right to receive funds from each member governmental unit.

The agreement stated a number of general purposes involving cooperative governmental action including the providing of joint services and facilities. ECCOG was required to prepare in advance a budget for each calendar year. Each member was to provide in its own budget for its share of ECCOG's budget. Allocation of each member's share was to be based on a stated formula. Dues were to be assessed, and special appropriations could be required. Nonpayment by a member was to be considered a monetary withdrawal by a member and default of the agreement. Other provisions covered withdrawal and dissolution and additional operational details.

It thus appears that the ECCOG agreement specified the matters required in section 28E.5. Because one of the purposes was to provide a means for joint financing of solid waste collection and disposal, EC-COG was also subject to the provisions of chapter 28F. *See* § 28F.1 ("The provisions of this chapter apply to the acquisition, construction, reconstruction, ownership, operation, repair, extension or improvement of such works or facilities, by a separate administrative or legal entity created pursuant to chapter 28E."). ECCOG was therefore required to be a corporation:

> When the legal entity created under this chapter is comprised solely of cities, counties, and sanitary districts established under chapter 358, or any combination thereof or any combination of the foregoing with other public agencies, the entity shall be both a corporation and a political subdivision with the name under which it was organized. The legal entity

may sue and be sued, contract, acquire and hold real and personal property necessary for corporate purposes, adopt a corporate seal and alter the same at pleasure, and execute all the powers conferred in this chapter.

§ 28F.1.

A chapter 28F entity is permitted to issue revenue bonds to finance its authorized operations. § 28F.3. It may pledge its income to secure the bonds. § 28F.4. The General Assembly was careful to provide, however, that the bonds would not become obligations of the governmental units participating in the entity:

> The principal of and interest on the bonds issued by an entity under the provisions of this chapter shall be payable solely from and secured by the net revenues of the project or projects and from other funds of the entity lawfully available therefor as provided in section 28F.5 and said bonds shall not in any respect be a general obligation of any public agency participating in said entity nor shall the entity or any public agency participating in said entity be in any manner liable by reason of such net revenues or other funds being insufficient to pay said bonds. All bonds issued by the entity shall contain a recital on their face that neither the payment of the principal nor any part thereof nor any interest thereon constitutes a debt, liability or obligation of any of the public agencies participating in the agreement creating such entity or of the entity itself, except that the entity shall be liable for the payment of such bonds from the net revenues derived from the project or projects and from the other moneys lawfully available therefor and pledged thereto pursuant to the provisions of the resolution which authorized their issuance.

§ 28F.6. The entity is given broad authority to decide how to operate its projects. § 28F.7.

In *Goreham v. Des Moines Metropolitan Area Solid Waste Agency,* 179 N.W.2d 449 (Iowa 1970), this court upheld the con-

stitutionality of the delegation of legislative power in chapter 28E. One ground of constitutional attack was the alleged lack of legislative authority "to delegate to political subdivisions of the state the power to create a new quasi municipality for the purpose of exercising functions delegated by the legislature to it". *Id.* at 453. Another ground of attack was the assertion that under the bond provisions now appearing in chapter 28F the bonds became the general obligation of the participating entities. *Id.*

In rejecting these grounds, the court recognized that the authority for local governments to form chapter 28E entities arises from that chapter and does not depend on any other statutory authority. *Id.* at 453–55. Because the resulting entity was required by what is now section 28F.1 to be a corporation, the entity created by the chapter 28E agreement in *Goreham* was a public corporation. *See Stanley v. Southwestern Community College Merged Area*, 184 N.W.2d 29, 33 (Iowa 1971) ("*Goreham* . . . also involved an overlaying type of municipal corporation. . . . [O]ur discussion of related issues and the acceptance of the 'new body corporate and politic' gave tacit approval to such corporation."). A federal court has reached the same conclusion. *See Central Iowa Refuse v. Des Moines Metropolitan Solid Waste Agency*, 557 F.Supp. 131, 136 (S.D.Iowa 1982) (Chapter 28E empowers municipalities "to create a new corporation and political subdivision"). Our decision in *Barnes v. Department of Housing and Urban Development*, 341 N.W.2d 766, 767 (Iowa 1983), is consistent with that view.

■ The agreement in this case calls ECCOG "a public body corporate and politic and separate legal entity." This language sufficiently evinces an intent of the parties that ECCOG be a public corporation. A municipal corporation is another example of "a public body corporate and politic." *See Kohler v. Cobb*, 31 N.J. 369, 374, 157 A.2d 681, 683 (1960); *King County Water District No. 54 v. King County Boundary Review Board*, 87 Wash.2d 536, 540, 554

P.2d 1060, 1063 (1976); 1 E. McQuillin, *The Law of Municipal Corporations*, § 2.07(a) (3rd ed. 1971).

■ Under the stipulated record, ECCOG is thus a public corporation created by the member governments pursuant to the provisions of chapter 28E. Consequently it possesses a corporate identity analogous to but separate from the corporate identity of its incorporators.

The remaining issue is whether the members are insulated from liability upon ECCOG's alleged contract obligation to Allis-Chalmers. Chapter 28E does not expressly limit their liability, and the agreement does not do so either. Section 28F.6 does expressly limit the liability of the member governments on bonds issued by a chapter 28E corporation but that provision does not otherwise answer the question of limited liability.

■ This liability issue is determined by deciding whether the incorporators of a public corporation are personally liable for corporate debts in the absence of statutory or charter provisions for limited liability. The general law of corporations is that stockholders of a corporation are not liable for debts of the corporation "unless the liability is expressly imposed by constitutional or statutory provisions, or by the charter, or by special agreement of the stockholder." 13A W. Fletcher, *Cyclopedia on the Law of Private Corporations* § 6213 (Rev. perm. ed. 1984). Individual liability of stockholders, if it exists, must arise from statute; it does not exist at common law. *Terry v. Little*, 11 Otto 216, 217, 101 U.S. 216, 217, 25 L.Ed.2d 864 (1879). It is fundamental that the limited liability of stockholders is the main feature that distinguishes a corporation from a partnership. *See Gray Construction Co. v. Fantle*, 62 S.D. 345, 352, 253 N.W.2d 464, 468 (1934).

■ Allis-Chalmers contends this general law is not applicable to public corporations or even to Iowa private corporations. We disagree. No distinction is generally recognized in the absence of statute be-

tween municipal corporation and private corporation contract liability. *See* 17 E. McQuillin, *The Law of Municipal Corporations,* § 49.60 (3rd ed. 1982). This proposition is confirmed rather than refuted by the existence of Iowa Code section 626.24, which provides municipalities with statutory means for paying judgments against them by levying taxes. The judgment binds the municipality, not the taxpayers, and the taxpayers' obligation arises from the statute.

■ Furthermore, contrary to Allis-Chalmers' argument, Iowa does not impose liability upon stockholders of private corporations when the governing statute and corporate charter do not grant limited liability. The opposite is true. When statutes do not impose ordinary contract liability on the stockholders, it does not exist. *Union Trust & Savings Bank of Ames v. Blair-Harper Seed Co.,* 200 Iowa 374, 379, 202 N.W. 839, 842 (1925); *Seaton v. Grimm,* 110 Iowa 145, 151, 81 N.W. 225, 227 (1899). Language relied upon by Allis-Chalmers that appears in *Spense & Garlick v. Iowa Valley Construction Co.,* 36 Iowa 407, 410 (1873) does not establish a different rule. In that case the court recognized a statutory delineation of corporate powers which included the power "[t]o exempt the private property of its members from liability for corporate debts...." Iowa Code § 1151(5) (Rev. of 1860). The statute merely enabled the corporation to preserve the limited liability available at common law.

■ We therefore hold that under the stipulated facts in the present case the individual members of a corporate entity created under sections 28E.4 and 28E.5 are not jointly and severally liable with the corporate entity upon a written contract entered by the entity with a third party.

CERTIFIED QUESTION ANSWERED.

All Justices concur except CARTER, J., who takes no part.