CLINTON NOVELTY IRON WORKS, Appellant, v. A. NEITING, Appellee.

**Corporations:** PUBLICATION OF NOTICE OF INCORPORATION.   A notice of incorporation printed in a newspaper published in a small town remote from the corporation's principal place of business, when there are several other papers of more general circulation published in larger and more accessible towns, is not a compliance with the statute requiring such notice to be printed in a newspaper as convenient as practicable to the principal place of business, and will not effect incorporation.

**Same:** INDIVIDUAL LIABILITY OF STOCKHOLDER.   The individual property of one who acquires an interest in a corporation within the three months allowed for publication of the notice of incorporation, is subject to the claims of creditors thereof arising after he became a member, where there was a failure to publish legal notice and no showing that such stockholder did not know all the facts connected with the organization at the time he became a member, or when the indebtedness was incurred.

*Appeal from Cedar District Court.*— HON. J. H. PRESTON, Judge.

FRIDAY, MAY 17, 1907.

ACTION at law to recover from defendant, as stock-
holder in an insolvent so-called corporation, the amount of
a judgment held by plaintiff, upon the ground that the said
pretended corporation, known as the " Cedar County Lum-
ber & Manufacturing Company," was never organized as
provided by law. The case was tried to a jury, resulting in
a directed verdict for defendant, and plaintiff appeals.—
*Reversed.*

*Grimm, Trewin & Moffit* and *Ellis & McCoy,* for ap-
pellant.

*Chas. W. Kepler & Son,* for appellee.

DEEMER, J.— On June 5, 1902, there was filed with
the recorder of deeds of Cedar county articles of incorpora-
tion of the Cedar County Lumber & Manufacturing Com-
pany, which were duly signed and acknowl-
edged. These articles were also filed with
the Secretary of State on June 16, 1902, and
on the same day, to wit, June 16, 1902, the
said Secretary of State issued his certificate to the effect that
the articles had been filed in his office. The articles named
the town of Lowden, in Cedar county, Iowa, as the corpora-
tion's principal place of business. At the time of filing
no newspapers were published in the town of Lowden, and
publication of the notice of incorporation required by law
was made in the Durant Star, a newspaper published in the
town of Durant, in Cedar county, on June 19 and 26 and
July 3 and 10, 1902. Durant is a small town more than
twenty miles by wagon road, and more than fifty miles by
rail, from Lowden. On July 18, 1902, a newspaper was
established at Lowden, which has been issued ever since, but
no publication of notice was ever made in that paper. The

1. CORPORATIONS: publication of notice of in- corporation.

town of Clarence is eight miles from Lowden, Stanwood thirteen miles, and Mechanicsville eighteen miles from Lowden, either by wagon road or rail.  The county seat of the county, Tipton, is seventeen miles by wagon road, and twenty-two miles by rail, from Lowden, and the town of Bennett is eleven miles by wagon road, and thirty miles by rail, distant therefrom.  In each of these towns one or more regular weekly newspapers of general circulation were published during the year 1902, but no notices of incorporation were published therein.  In the county seat town two newspapers of general circulation in Cedar county were published, each of them having a large circulation and being official papers; and at Stanwood, a town having a population of four hundred and fifteen according to the 1900 census, there was one paper regularly published, which was also an official paper of the county.  The population of the other towns mentioned, according to the census for the year 1900, was as follows: Tipton, 2,513; Clarence, six hundred and seventy-five; Mechanicsville, seven hundred and three; Bennett, two hundred and thirty-eight; and Durant, five hundred and sixty.  After September 16th of the year 1902 plaintiff sold to the so-called corporation goods to the amount of $255.15, and, the account remaining unpaid, it obtained judgment thereon against the corporation in May of the year 1904.  Defendant was not one of the original organizers or promoters of the corporation but acquired stock therein to the amount of $1,000 on September 9, 1902, for which he paid cash at the par value thereof.  On November 20, 1902, the corporation made an assignment for the benefit of its creditors, and in administering upon its assets there was not enough to pay the preferred creditors.  At the time the indebtedness to plaintiff was contracted, defendant was a stockholder and director and the secretary of the corporation.

It further appears from the evidence, which is undisputed, that Lowden is in the northeastern part of Cedar

county on the main line of the Chicago & Northwestern Railway, and that Durant is in the extreme southeastern part of the county on the main line of the Chicago, Rock Island & Pacific Railway, and ·that to reach Durant from Lowden, by rail, a traveler must go through Clarence, Stanwood, Tipton, and Bennett, thence into another county, where a change of cars must be made, and back to Durant. A branch line of road runs from Clarence to Tipton, a main line from Tipton to Bennett, a branch from Bennett to Stockton, and a main line from Stockton to Durant. There is no testimony as to the extent of the circulation of the Durant Star; but the town in which it is published is small, and, located as it is, it is quite likely that its patronage is local and confined to the particular locality served. The town itself is near the common corner of Muscatine, Scott, and Cedar counties, and the rail connections between Lowden and Durant are such that in all probability there is little or no business connection between the two places.

In one respect this case is ruled by *Berkson v. Anderson,* 115 Iowa, 674, wherein it is said, regarding the publication of the notice of incorporation: " The statute provides that a notice must be published in some newspaper as convenient as practicable to the principal place of business of the corporation. . . . The word ' convenient ' has many definitions; but, as used in this statute, it seems to us but one thought in relation thereto could have been in the minds of the makers of the law. The requirement that the notice be published in some newspaper as convenient as practicable to the principal place of business of the corporation means that it shall be published in the nearest or most handy paper suitable therefor. Any other construction of the language used, in view of the general context, would be strained and unnatural. . . . We must hold, however, that the publication of the notice under consideration was not in substantial compliance of the law; otherwise, no limits can be prescribed in which such a notice may not be legally pub-

lished.  .  .  .  The publication of the notice before us,
not being in substantial compliance of the statute as to place,
must be held to be no notice at all, and consequently no pro-
tection to the defendants." In view of the facts before us,
it seems that it would hardly be possible to find a newspaper
more remote from Lowden than the one in which the notice
in the instant case was published; and, applying the rule
in the *Berkson* case to this, it is clear that defendant is
liable, unless it be for the matters to which we shall now
refer.

It is first said that no notice was required until three
months after the certificate was issued by the Secretary of
State (Code, section 1614), and that the corporation made
an assignment within the three months allowed for the pub-
lication. This proposition is based upon a mistake in the
abstract, which was corrected before the submission of the
case. We now have certified the certificate of the Secretary
of State, which was issued June 16, 1902. This is conclu-
sive upon the proposition.

II.  Next it is argued that, as defendant was not an
organizer or promoter of the corporation and in no way re-
sponsible for the failure to give proper notice, he cannot be

2. SAME: indi-    held personally liable. But it will be ob-
vidual liability
of stockhold-    served that defendant became a member of the
ers.              organization within the three months allowed
for the publication of a proper notice, that he was one of the
directors and an officer of the corporation, and that plaintiff
sold the goods after defendant acquired his stock. Plaintiff
sold its goods after the expiration of the three months for
the publication of the notice, and had the right to suppose
that proper notice had been given. At least, its sale was
not during the period allowed for the giving of notice, and
therefore there are no equities in defendant's favor. There
is no showing that defendant did not know all the facts con-
nected with the organization of the corporation at the time
he became a member or when plaintiff sold it the goods.

Whatever the rule might be as to an innocent purchaser after the expiration of the time for publication of notice, defendant is in no position to urge that there are equities in his favor which will relieve him.   He is only relieved from individual liability because he was a member of a *de jure* corporation which limited liability of its members to the amount of stock subscribed and paid for.   If the corporation was not legally organized, he was liable under the facts disclosed under our statute, which provides that for failure to substantially comply with the requirements as to notice, etc., the individual property of the stockholders shall be liable for the corporate debts.   See Code, section 1616.   Our conclusions find support in what is said in *Seaton v. Grimm,* 110 Iowa, 145, and in the cases therein cited.

The trial court was in error in directing a verdict for the defendant, and its judgment must be, and it is, *reversed.*