LOWDEN SAVINGS BANK, Appellant, v. AUGUST NEITING and L. H. SNOKE.

**Corporations:** INDIVIDUAL LIABILITY OF STOCKHOLDERS FOR CORPORATE DEBTS. The individual property of stockholders of a corporation defectively organized, because of an insufficient publication of notice of incorporation, is not liable for indebtedness contracted within three months from the date of the certificate of incorporation, such being the time allowed for publication of the notice: Nor is their property liable for a corporate debt created in renewal of obligations contracted within such time.

*Appeal from Cedar District Court.*—HON. M. P. SMITH, Judge.

WEDNESDAY, JANUARY 13, 1910.

Rehearing Denied, Monday, April 11, 1910.

This is an action against defendants as stockholders in the Cedar County Lumber & Manufacturing Company, to recover amounts alleged to be due to the plaintiff from said company on a promissory note and on account of an overdraft. The defendants denied their liability as stockholders, and also denied the existence of the indebtedness from the company to the plaintiff. At the conclusion of the evidence on both sides, the court, on motion of the defendants, directed a verdict in their favor, and from judgment on such verdict the plaintiff appeals.—*Affirmed.*

*D. C. McGillivray* and *Jamison & Smyth,* for appellant.

*C. W. Kepler & Son* and *C. O. Boling,* for appellees.

McClain, J.—In June, 1902, H. J. Brownell and J. H. Brownell organized in the town of Lowden a joint-stock company, known as the Cedar County Lumber & Manufacturing Company, to engage in the business of manufacturing sash, doors and blinds. The capital stock of the company consisted of $25,000, a considerable portion of which was subscribed by citizens of the town. The certificate of the Secretary of State authorizing the corporation to do business was issued on June 16, 1902; but, as contended by plaintiff, there was no proper publication of notice, as required in Code, section 1613, and it is claimed that on this account the individual property of the stockholders became liable for the corporate debts. As the publication may be made within three months from the date of the certificate of incorporation (Code, section 1614), the stockholders would not be liable for any indebtedness contracted prior to September 16, 1902. On September 27, 1902, the corporation executed

to plaintiff its promissory note for $4,500, of which amount, as plaintiff alleged, $1,825.33, with interest thereon, remained unpaid. Plaintiff also alleged that at the expiration of the three-months period above referred to the corporation was indebted to it for an overdraft on its account to the extent of $942.90. For the money thus alleged to be due from the corporation to the plaintiff judgment was asked against defendants as stockholders as already indicated.

In the view which we shall take of this case it is unnecessary to determine whether the notice of publication was sufficient. In the case of *Clinton Novelty Iron Works v. Neiting,* 134 Iowa, 311, it was held that this same corporation was not properly organized on account of the defect in publication of notice; but, as there was other evidence in this case than that which was there referred to, that decision is perhaps not conclusive.

In support of the ruling of the court directing a verdict for defendants it is contended for appellee that the note sued on was, to the extent of $3,055, a renewal of previously existing indebtedness contracted prior to the 16th of September, 1902, as to which there was no liability on the part of defendants, for reasons already indicated, and that the overdraft was subsequently extinguished. If these contentions are sound, we need not consider the other questions fully argued by counsel on each side.

Plaintiff's ledger account with the Cedar County Lumber & Manufacturing Company began on June 5, 1902, with the entry of a deposit of $3,000, which as plaintiff's cashier testified, represented credit given for a note executed on that date for like amount. It does not definitely appear anywhere in the record who was the payee of this note, but from the statements of the witness that Brownell got credit for his company by giving a note for that amount, and that it "was to the Low-

den Savings Bank," it quite definitely appears that the note was not only delivered to the plaintiff, but that the plaintiff was named as payee therein. It is true that the witness subsequently testified that the plaintiff did not make any such loan, and that on the same date the plaintiff charged the Durant Savings Bank, an institution of which the president of plaintiff bank was also president, with the $3,000 note received from Brownell, but it is not pretended that the note was sold to the Durant Bank, or that plaintiff acted as agent for the Durant Bank in making the loan, and the only rational explanation of all the evidence on the subject seems to be that for some reason the note was forwarded to the Durant Bank to be held on account of the plaintiff. When the $4,500 note involved in the present action was executed September 27, 1902, by the Lumber Company to the plaintiff bank, the company was given credit on its ledger account by plaintiff with $1,445, and the remainder, $3,055, was included in a credit of $5,000 given to the Durant Bank. Plaintiff's cashier, as a witness, admits that this credit to the Durant Bank was, to that extent, on account of the $3,000 note and interest thereon; and if, as we think the evidence already referred to indicates without doubt, the $3,000 note was simply held for the plaintiff bank by the Durant Bank, then to that extent the $4,500 note did not represent a new indebtedness, but only a renewal of a previous indebtedness, for which these defendants were not liable as stockholders in the Lumber Company, and for which they were not rendered liable by this renewal. The evidence is to our minds conclusive that when the Lumber Company executed the $4,500 note, the understanding between it and plaintiff was that it was getting credit to that amount from plaintiff. As against this credit, plaintiff had the right to set off the amount due on the $3,000 note then mature, provided such note was the property of plaintiff, but it would

not have a right, without the direction of the Lumber Company, to apply a portion of that credit to the extinguishment of a note held by the Durant Bank. Plaintiff's cashier, who transacted the business, does not pretend that any such direction was given, or that plaintiff acted as agent for the Durant Bank in securing payment of the note. As the $4,500 note was reduced by payments to the amount now claimed, which is much less than $3,000, it does not appear that the $4,500 note represents any indebtedness for which the defendants can be held.

As to the claim for overdrafts, it is sufficient to say that, while plaintiff's account against the Lumber Company shows overdrafts to the extent of $943.86 on September 19th, it also shows that these overdrafts were accumulated prior to September 16th, and that on the 27th of the same month these overdrafts were wiped out by the credit given to the Lumber Company on account of the $4,500 note, so that, as between the plaintiff and the Lumber Company, the overdrafts for which recovery is claimed were paid and extinguished, and plainly no recovery can be had against defendants on this account. If the $4,500 note was in fact given for the extinguishment of indebtedness to the plaintiff on account of the $3,000 note, and the overdrafts now claimed, all of which accrued prior to September 16th, then the plaintiff can not recover against these defendants for the note to the extent to which it has not been subsequently satisfied by payments; for the amount not thus satisfied is much less than the amount of the indebtedness due by the Lumber Company to plaintiff prior to September 16th.

The judgment of the lower court is therefore *affirmed*.