WILKIN GRAIN COMPANY, Appellee, v. MONROE COUNTY CO-OPER-ATIVE ASSOCIATION et al., Appellants.

No. 39371.

MARCH 5, 1929.

REHEARING DENIED JUNE 24, 1929.

*John T. Clarkson* and *Anderson & Perry,* for appellants.

*John F. Abegglen, Miller & Everett,* and *Bates, Simmons & Richmond,* for appellee.

KINDIG, J.—The primary question here for consideration is whether or not the defendants, stockholders in the Monroe County Co-operative Association, of Albia, are liable for that institution's debts because it did not legally become a  corporation under the laws made and provided therefor. Another phase of the litigation is incidentally involved. It has to do with the Monroe County Co-operative Mercantile Company and its stockholders.

Appellee has alleged in its petition, and the trial court likewise found, that the property belonging to the Monroe County Co-operative Association and its stockholders was placed in the Monroe County Co-operative Mercantile Company, as a holding company. In accordance with appellee's prayer, the district court, after finding the stockholders of the Monroe County Co-operative Association personally liable for the corporate debts, impressed a lien upon the holdings of the Monroe County Co-operative Mercantile Company, in order to secure said indebtedness. Of course, if the stockholders in the Monroe County Co-operative Association were not responsible for the corporate debts of that concern, then there would no longer remain a basis for the estab-

lishment of the lien. So, in view of the fact that it is hereafter determined that the stockholders in the Monroe County Co-operative Association are only individually liable in one instance, there will be no occasion to discuss the problem relating to the trust aforesaid until after the main propositions are disposed of. Throughout the remainder of the discussion, the Monroe County Co-operative Association will be conveniently referred to as "the association."

Before the indebtedness above named was incurred, certain individuals attempted to incorporate the association under Chapter 218 of the Acts of the Thirty-sixth General Assembly. This legislation now constitutes and is Chapter 389 of the 1927 Code. As far as material, the provisions of that enactment are as follows:

"8459. Any number of persons, not less than five, may associate themselves as a co-operative association, society, company or exchange, for the purpose of conducting any agricultural, dairy, mercantile, mining, manufacturing or mechanical business on the co-operative plan. For the purposes of this chapter, the words 'association,' 'company,' 'corporation,' 'exchange,' 'society,' or 'union,' shall be construed to mean the same.

"8460. They shall sign and acknowledge written articles which shall contain the name of said association and the names and residences of the persons forming the same. Such articles shall also contain a statement of the purposes of the association, and shall designate the city, town, or village where its principal place of business shall be located. Such articles shall also state the amount of capital stock, the number of shares, and the par value of each.

"8461. The original articles of incorporation of associations organized under this chapter, or a true copy thereof, verified as such by the affidavits of two of the signers thereof, shall be filed with the secretary of state. A like verified copy of such articles and certificates of the secretary of state, showing the date when such articles were filed with and accepted by the secretary of state, shall, within thirty days of such filing and acceptance, be filed and recorded with the recorder of deeds of the county in which the principal place of business of the corpo-

ration is to be located, and no corporation shall have legal existence until such articles be left for record. The recorder shall forthwith transmit to the secretary of state a certificate stating the time when such copy was recorded. Upon receipt of such certificate, the secretary of state shall issue a certificate of incorporation.''

With that enabling act in existence, certain of the defendants attempted to comply therewith for the purpose of organizing the association. That there was an attempted compliance is not in dispute. Disagreement between appellants and appellee arises over the effect of the endeavor to thus incorporate. After the incorporators tried to meet the requirements of such legislation, the association commenced a mercantile business at Albia. A store was opened and operated. During the progress of that business, credit was asked for and extended. Thereunder, goods and merchandise were purchased. Among these creditors were the appellee, Wilkin Grain Company, a copartnership, and several individuals and firms who, as assignors, transferred their various claims to it, as assignee. Hence, this proceeding was instituted by appellee for itself and those assignors.

There is no dispute over the fact that the property was thus delivered by appellee and its assignors to the association, nor is it contended that the consideration therefor has ever been paid. Controversy arises when it is sought to place the burden of the debt upon the association's stockholders, rather than upon it. Appellants assert that they are not required to satisfy appellee's demand. They say that the very act of incorporation exempted them from so doing. Upon this proposition, it is important to know whether or not the association was, in fact, incorporated. If it was, appellants, as stockholders, are not accountable for the association's financial obligation, because Section 8484 in the 1927 Code, relating to incorporation of such associations, contains the following relief therefrom:

''The private property of the stockholders shall be exempt from execution for the debts of the corporation.''

Therefore, inquiry must be made in reference to the sufficiency of the association's incorporation. On the one hand, appellee insists that the incorporation was so incompletely per-

formed that it amounted to nothing; while, on the other, appellants maintain that the result of their efforts in that regard rose at least to a de-facto corporation, as distinguished from the de-jure institution of that kind. Thus, they continue by arguing that, under a de-facto corporation, the stockholders cannot be held for the corporate debts. By way of answer to this contention, appellee asserts that, under the special statutory enabling act, there can be no de-facto corporation, because, they say, if the very steps necessary to receiving a certificate of incorporation are not fully complied with, there is no corporate existence at all. Obviously, it becomes important to find whether or not there was a de-facto corporation; for parenthetically it is noted that Section 8362 of the 1927 Code does not apply, because it is contained in Chapter 384, while the association was organized under Chapter 389. This section relates to stockholder liability for failure to substantially comply with the statutory requirements regarding organization and publicity. Both appellants and appellee admit that the stockholders in the association are not affected by that statutory liability. Wherefore, a basis must be found elsewhere, to place the association's debts upon its stockholders.

Such is the problem. The solution therefor will be found in the statutory requirements and the efforts made by the association to meet them.

I. An analysis of Section 8461, supra, will enlighten. First it is thereby demanded that:

"The original articles of incorporation of associations organized under this chapter, or a true copy thereof, verified as such by the affidavits of two of the signers thereof, shall be filed with the secretary of state."

These appellants performed that condition prerequisite to the very letter, for they filed with the secretary of state their "original articles of incorporation." No complaint is made by appellee in that regard.

Second, that section of the enabling act requires:

"A like verified copy of such articles and certificates of the secretary of state, showing the date when such articles were filed with and accepted by the secretary of state, shall, within thirty

days of such filing and acceptance, be filed and recorded with the recorder of deeds of the county in which the principal place of business of the corporation is to be located.''

At that point, appellee declares, non-compliance was made by the association, for: (a) The original articles, rather than a verified copy, were filed with the county recorder; (b) the secretary of state certified (if at all) concerning the filing of those articles in his office, but not regarding his acceptance thereof; and (c), that state official's certificate, such as it was, contained a facsimile signature, placed upon the articles by a stamp, rather than by the handwriting of the principal. Resultantly, appellee concludes that, under the circumstances, there could not be a corporation, due to the very language of Section 8461. Reference is made to the following words:

''And no corporation shall have legal existence until such articles be left for record.''

Succeeding the association's actions aforesaid, the county recorder did record the articles of incorporation, and thereafter, in the due course of time, the secretary of state issued and delivered to the incorporators a certificate of incorporation. Armed with such ''certificate,'' the appellants became stockholders, and performed the business above mentioned. Failure of the association to more nearly comply with said statutory demands prevented it from becoming a de-jure corporation. Due to the defects of organization, notice of the incorporation was not constructively imparted. Separate publication of notice for this particular formation was not provided by statute. Such constructive information, therefore, must be given by recording the properly authenticated and certified articles in the recorder's office. Those interested can only know of the incorporation through such recorded articles, together with the authentication and certificate of acceptance. Without that, there would be no notice, under Section 8461, supra. *Slocum v. Head,* 105 Wis. 431 (81 N. W. 673).

We do not here decide whether it was insufficient for the secretary of state to use the rubber stamp in placing his signature on the certificate. Also, it is not determined now that the recording of the original articles of incorporation, rather than a certified copy thereof, resulted in a fatal defect, preventing the

proposed from becoming a real corporation. But after making those reservations, it is hereby held that the failure of the secretary of state to properly certify that he accepted the articles of incorporation was sufficient to, and did, prevent the institution from becoming a de-jure corporation, and gave it a de-facto status only.

Yet the controversy is not ended by finding lack of de-jure existence, because, nevertheless, the association's status may be that of a de-facto corporation. A de-facto corporation is something less than a de-jure. We distinguished between them in *Kosman v. Thompson*, 204 Iowa 1254, wherein it is said:

"A corporation *de jure* is a legal entity which has a right to corporate existence and to exercise corporate powers of which it cannot be deprived even by the state in a direct assault contrary to the terms of its charter * * * [citing authorities]. On the other hand, a *de facto* corporation exists so that the legality of its subsistence cannot be attacked collaterally where: (1) There is a special act or general law under which such a corporation may lawfully live, (2) a bona-fide attempt to organize under the law in colorable compliance with the statutory requirements, and (3) actual user or exercise of corporate powers in pursuance of such law, and attempted organization * * * [citing authorities]."

"*De jure*" means, literally, "of right," "lawful, by right and just title" (18 Corpus Juris 471); while "*de facto*" denotes, in law as well as elsewhere, "of fact; from, arising out of, or founded in, fact; in deed; in point of fact; actually; really." 18 Corpus Juris 453; 2 Words & Phrases (3d Ser.) 791.

Manifestly, if all the requirements of the statute are literally carried out, there would be a de-jure, and not a de-facto, corporation. *Clinton Novelty Iron Works v. Neiting*, 134 Iowa 311; *Kosman v. Thompson*, supra; *Johnson v. Okerstrom*, 70 Minn. 303 (73 N. W. 147). Even a substantial, as distinguished from a complete, compliance will make a corporation de-jure. *Clinton Novelty Iron Works v. Neiting*, supra; *Johnson v. Okerstrom*, supra. In the *Johnson* case, supra, it is said, on page 310:

"The claim [that a de-jure corporation did not arise] ignores the fundamental principles applicable to corporations de-

facto; for, if there had been a compliance with the statute in the respects complained of, a corporation de-jure would have been created.''

Necessarily, then, a de-facto corporation can exist, even though a de-jure does not, because the enabling statute was insufficiently complied with. How far below the statutory standard the incorporators may go, and still have the benefits of a de-facto status, depends, of course, upon the facts of each individual case. However, there is a criterion which will serve as a general standard to measure the result of attempts to incorporate. Mention was made of it in *Kosman v. Thompson,* supra. At least four prerequisites are essential. Measured by that yardstick, the incorporators of the association here accomplished a de-facto corporation. Elucidation will result from an application of such rule for de-facto organization to the performances of appellants in the premises.

To begin with, there was a law under which such corporation could organize and live. Then, under this permissive legislation, the association's incorporators made a bona-fide attempt to organize. About this there is no serious dispute. After a careful reading of the record, we are convinced that bad faith was not present at any stage of the proceedings. Again, it seems certain that these incorporators made a colorable compliance with the statutory requirements. They apparently, if not technically, met the conditions. Articles of incorporation were necessary, and accordingly, appellants prepared, executed, acknowledged, and delivered them to the secretary of state. No doubt exists about this. Objection is not made thereto. When they were thus received, the secretary of state filed those articles of incorporation. These were the originals. A verified copy thereof could have been used, but it was not. Some confusion arises at this juncture, and the original, rather than a verified copy, was sent by the secretary of state to the county recorder. Appellee says a verified copy should have been thus sent and recorded, and that the use of the original in lieu thereof was fatal.

Without doubt, the certificate of the secretary of state related to the date of the filing in his office, and did not expressly include the time of his acceptance. Implication in reference to this, appellee says, is not enough. Undoubtedly the alleged certifi-

cate was stamped, and a facsimile signature utilized. Complaint of this is also made by appellee. Yet the articles thus sent and certified were recorded by the county recorder, and thereafter, in due time, a certificate of incorporation was issued by the secretary of state. Whatever may be said in reference to the shortcomings of that proceeding, one thing is certain; and that is, each statutory step was attempted by the incorporators. Possibly they did not go far enough in their efforts, yet they tried to meet every prerequisite. Colorable compliance, as recognized under the doctrine aforesaid, does not mean actual conformity. If it did, the result would be a de-jure corporation, and there could not be such a status as a de-facto organization. Consequently, in the case at bar, appellants, by endeavoring in good faith to meet every statutory requirement, made a colorable compliance therewith.

One more condition was necessary for the test, and that is, "actual user or exercise of corporate powers in pursuance of such law and attempted organization." Prior suggestion has been made about the issuance of the corporate certificate to, and the transaction of mercantile business by, the corporation. Throughout appellee's amended petition, reference is made to the association's exercise of corporate power. Included among these are the payment of corporate fees and the purchase of merchandise by the corporate entity. Forsooth, in an amendment to appellee's petition, the allegation is made that the major portion of the indebtedness was incurred through the sale of goods to the corporation. "User" of a corporate power is unquestionably established. Hence, the four tests for de-facto existence have been fully met by the association. Therefore, a de-facto corporation resulted.

II. But appellee insists that there cannot be a de-facto status because the same is expressly prohibited by statute. Reference is made to Section 8461, supra, wherein it is said:

"* * * no corporation shall have legal existence until such [certified] articles be left for record."

That, however, is no more than saying that, without such certification, the institution cannot be de-jure. Of course, as between the state and the corporation, there would be no "legal

 existence." This does not mean that the organization could not have a status. De-facto corporations do not have "a legal existence," as between themselves and the state. They live, not in law, but in fact. Here appellee cites *Jones v. Aspen Hdw. Co.*, 21 Colo. 263 (40 Pac. 457). Therein are these words:

"A de-facto corporation can never be recognized in violation of a positive law." Consideration, however, must be made of the special statute which gave rise to that pronouncement. It read: "No such corporation * * * [the one discussed in that opinion] shall have or exercise any corporate powers * * *."

Distinguishing features readily appear between that legislation and Section 8461, supra. The latter relates to legal, or de-jure, existence, while the former prevents the exercise of any corporate power, thereby including both de-jure and de-facto. Existence, under Section 8461, supra, is not prohibited, but "legal existence" is. Wherefore, we are constrained to hold that the association could and did have a de-facto existence.

III. If, as we have held, the appellants accomplished a de-facto status, they, as stockholders, are not liable, under this record, for all the corporate debts, but merely one of them, which,  because of peculiar conditions, is placed in a class by itself. With the one exception, clearly there is no evidence in the record to substantiate the fact that appellee and its assignors were deceived about the association's incorporation, or in any way dealt with the appellants as copartners. Nor, except in the one instance, does it appear anywhere that credit was extended to any of the appellants on the theory that there was personal liability for the debt. Moreover, the express allegations of two amendments to the petition are to the effect that the merchandise, in all instances but one, was sold to the corporation, as such. Admission thereof was made by the appellants in their answer, and the fact thereby became conclusive. In only the one event is it claimed that the appellee did not understand that it was dealing with the corporation. Under those conditions, there is no stockholder liability. 14 Corpus Juris 987, Section 1527; *Johnson v. Okerstrom*, supra; *Bond & Braswell v. Scott Lbr. Co.*, 128 La.

818 (55 So. 468); *Tisch Auto Supply Co. v. Nelson,* 222 Mich. 196 (192 N. W. 600); *Globe Pub. Co. v. State Bank of Nebraska,* 41 Neb. 175 (59 N. W. 683); *American Radiator Co. v. Kinnear,* 56 Wash. 210 (105 Pac. 630); *Seaton v. Grimm,* 110 Iowa 145, on page 151; 26 Am. & Eng. Encyc. of Law (2d Ser.) 1027. See *Bergeron v. Hobbs,* 96 Wis. 641 (71 N. W. 1056); 1 Cook on Corporations (4th Ed.), Section 234.

Time after time, appellee, in its petition, recognizes the association's corporate capacity. Those facts and circumstances above related were pleaded by appellee itself. We are constrained to hold, therefore, under the whole record, that appellee and its assignors (omitting the one instance) so recognized the corporation and contracted with it that the burden of the indebtedness cannot now be placed upon the stockholders. Except in the single occasion noted, prejudice to appellee does not appear to have resulted because the association was a de-facto, rather than a de-jure, organization. Discrimination must here be made between the doctrine just discussed and the so-called additional statutory liability. Many of appellee's cases relate to that statutory responsibility. The statute is penal, and the accountability for debts arising thereunder is not contractual. *Union Tr. & Sav. Bank v. Blair-Harper Seed Co.,* 200 Iowa 374; *Adler v. Baker-Dodge Theatre Co.,* 190 Iowa 970; *Schumacher v. Sumner Tel. Co.,* 161 Iowa 326; *Clinton Novelty Iron Works v. Neiting,* supra.

Upon this basis of the additional statutory burden requiring a de-jure organization, many, if not all, of appellee's citations can be harmonized and distinguished. For instance, *Slocum v. Head,* supra, was decided upon the ground of strict compliance. However, even then, it recognized the doctrine of the de-facto status. See *Franke v. Mann,* 106 Wis. 118 (81 N. W. 1014). Likewise, explanation can be made of the seeming inconsistency between our discussion and the case of *Loverin v. McLaughlin,* 161 Ill. 417 (44 N. E. 99). Said decision was based upon statutory liability. *Inter-Ocean Newspaper Co. v. Robertson,* 296 Ill. 92 (129 N. E. 523). By recognizing, therefore, the difference between such statutory responsibility and the doctrine relating to de-facto organizations without that superadded burden, the apparent conflict vanishes.

IV. What has been said does not apply to the excepted

932

claim above recognized. Reference is made to appellee's own demand against the appellants for $214.13, plus interest. Its pleading with regard thereto alleges that the credit was extended to the association as a copartnership, and to the appellants as individual members thereof. Nothing appears to indicate that such indebtedness was contracted with the corporation, and the burden is upon appellants to prove that the de-facto status exempts them from paying this account. There being no evidence of a contract with the corporation, a different basis of liability is presented.

Previously, we concluded that the de-facto status resulted from such lack of compliance with statutory requirements as not to impart the intended publicity. Consequently, appellee, so far as its instant claim is concerned, had no knowledge of the incorporation, under the record, and apparently contracted with a copartnership, as alleged. Resultantly, the appellants, to this limited extent, are liable to appellee, under the facts and issues, for the price of said merchandise furnished the association.

V. As originally stated, the trial court established a lien for the indebtedness against the property held by the Monroe County Co-operative Mercantile Company on the theory that this institution was merely the holding company for the Monroe County Co-operative Association. However, the evidence is not sufficient to support such conclusion. On the whole record, then, under the theory on which the case was tried, we are of the opinion that the trial court was in error when deciding that the property of the Mercantile Company should be impressed with the trust.

Wherefore, the judgment and decree of the trial court is reversed in all respects, except in so far as it relates to appellee's individual claim for $214.13, plus interest. To that limited extent, it is affirmed.—*Affirmed in part; reversed in part.*

ALBERT, C. J., and EVANS, FAVILLE, WAGNER, and GRIMM, JJ., concur.