FIRST MORTGAGE BOND HOMESTEAD ASSOCIA-
TION ᴇᴛ ᴀʟ. *v.* O. PARKER BAKER ᴇᴛ ᴀʟ.

WILLIAM H. HUDGINS *v.* O. PARKER BAKER ᴇᴛ ᴀʟ.
[Nos. 39, 40, January Term, 1929.]

310

*Decided April 26th, 1929.*

The causes were argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Robert Biggs* and *Charles McHenry Howard,* with whom was *William H. Hudgins* on the brief, for the appellants.

*George M. Brady* and *O. Parker Baker,* with whom were *Maloy, Brady & Yost* and *Miles & Edgett* on the brief, for the appellees.

BOND, C. J., delivered the opinion of the Court.

The two appeals bring up a single controversy over the representation of divergent interests on the board of directors of a corporation. The questions at issue are involved in difficulty because of departures in the use of words and forms in the organization and business of the corporation, and because proceedings taken by the contestants were irregular in some respects.

The business and methods of the corporation were described in detail in the opinions in the cases of *First Mortgage Bond Homestead Assn. v. Mehlhorn,* 133 Md. 439, and *First Mortgage Bond Homestead Assn. v. Nelson,* 151 Md. 181; and the printed forms by which the business was carried on were quoted at length in those cases, and need not be repeated here. The corporation was originally incorporated as a building association under the laws of this state, and an act of 1910, chapter 242, giving it some additional powers, still provided (section 3) that it should be subject to all the laws made and provided with reference to building and homestead associations in this state. But it has adopted some business forms and methods followed more familiarly in mortgages to trustees to secure issues of corporate bonds. When an approved borrower on mortgage of property applies for a loan, he subscribes to an appropriate number of shares of stock in the corporation, as if he were becoming a member of an ordinary building association, and agrees to pay a specified amount monthly on that stock as dues, another amount as interest on the loan to be made, and a third sum as expenses

on the property to the parties legally entitled to receive the sum, and such other sum as may be necessary. And it is agreed in the application that all the amounts thus paid in shall, until maturity of the stock or the release of the mortgage, remain in the hands of the corporation as agent of the borrower, and the corporation shall pay for the ultimate release all moneys due the borrower under the by-laws, which may be necessary for that purpose. And it is agreed that the money shall constitute a sinking fund for payment of the debt. All the money from all borrowers is, however, held in one fund, used in the general business of the corporation. The by-laws allow for loans "on the drop-interest plan," upon which the borrower is not to share in the profits of the association, "or on any other plan agreed upon," and the form for application for loans speaks of an option in the borrower in the choice of plan; but, actually, all borrowers have contracted on the drop-interest plan, and, so, have been without interest in the profits of the association's business. Upon securing a loan the borrower's stock, according to the by-laws, falls into the category of redeemed stock.

But ultimately the borrower does not borrow from the association. At the time of signing his application for a loan, he also signs bonds to be sold when and if possible to third persons; the mortgage is expressly given to secure the bonds, and it is made to the association as trustee for that purpose. And, as stated, the amounts paid into the association by the borrowers under the several heads are accumulated on the books of the association until maturity and payment of the bonds.

The corporation has investing shareholders also. Like ordinary building association shareholders, they undertake to pay the total value of their shares in instalments, but they share in the profits of the association's business, and are the only shareholders who do so. The present controversy is one which has arisen between two groups of such investing shareholders. Mr. O. Parker Baker, who was the originator of the enterprise, has had a minority of shares subscribed, and he, together with associates, all still holding together

only a minority of shares, has been opposed by subscribers to what has been, up to the beginning of the contest, at least, a large majority.

It appears that in 1927, after a lapse of several years without a meeting of stockholders, a dispute arose for the first time between Mr. Baker and holders of a majority of the investment shares, and it was settled by an agreed division of representation on the board. And, after that, Mr. Baker, to fortify the position of himself and his associates thenceforth, and insure future control by them, induced Mr. F. M. Supplee to subscribe to 2,000 shares, to be divided among Mr. Supplee and three of his family or business associates. Mr. Baker then, in the following year, called a regular annual meeting of stockholders for April 2nd, 1928, to elect a new board of directors. The call was by means of a notice printed in a daily paper and not otherwise. On April 2nd, shareholders assembled in response to the call, officers of the meeting were elected, and tellers, after a canvass of shares represented, and after a settlement by them of a question of one shareholder's right to vote, reported over 2,000 shares represented, out of a total of 2,500 shares issued. Mr. Baker offered some amendments to by-laws, and these were laid over for a later meeting, and the meeting then proceeded with the election of directors. The nominations and elections were contrary to Mr. Baker's wishes, and he announced that the meeting had been called upon legally insufficient notice, and could take no action, because no notice had been mailed to individual stockholders as required by section 19 of article 23 of the Code, applicable in the absence of a provision in the by-laws of any particular corporation covering the subject of notice. The meeting proceeded with the election, however, Mr. Baker apparently voting. Mr. Baker did not take part in a subsequent meeting of the directors voted for.

So far as it concerns Mr. Baker and other shareholders who attended the meeting, the objection on the ground of lack of mailed notices is untenable, for, quite apart from the fact that Mr. Baker himself called this meeting, those who actually attend a meeting have not ordinarily, and have not here,

any reason to complain of a lack of notice to bring them to it. The statutory provisions regarding notice are designed only for the benefit of stockholders, to insure them proper opportunity to attend the meetings; and if the object is attained, the law is not then concerned with the method for its own sake. *Tompkins v. Sperry, Jones & Co.,* 96 Md. 560, 580; *Larkin v. Maclellan,* 140 Md. 570, 580; *Cook, Corporations,* sec. 599; *Borg & Co. v. New Orleans,* 244 Fed. 617; *Foote v. Greilick,* 166 Mich. 636; *Hill v. Atlantic & N. C. R. Co.,* 143 N. C. 539; *Handley v. Stutz,* 139 U. S. 417, 423. And it is questioned whether those who do attend a meeting, and have no ground for objecting on their own behalf because of a defective notice, are the ones to make objection for those who do not attend, and who do not themselves object to the action taken. Reviews of Decisions, 51 *A. L. R.* 941, and *Ann. Cas.* 1916E 1038. Compare section 27 of article 23 of the Code. There are in this instance, however, holders of a few shares, not borrowers, who have intervened with objections to the meeting of April 2nd, and it seems to us that their objections invalidate the meeting. It is true that there are some irregularities in corporate proceedings which cannot be complained of by a minority stockholder, so long as the action taken is within the legitimate power of the majority and the majority is satisfied. *Shaw v. Davis,* 78 Md. 308, 316, etc. But this principle does not, we think, apply to insufficiency of notice of a meeting of stockholders, and validate action taken at a meeting of which a minority and objecting stockholder was not notified. In our opinion, and we think according to the authorities, every stockholder is entitled at least to an opportunity to attend and be heard if he wishes, and to vote on measures proposed at a corporate meeting; and action taken at a meeting held without giving him this opportunity by full legal notice may be repudiated and set aside by him. Reviews of Decisions, 51 *A. L. R.* 941, *Ann. Cas.* 1916E 1038, and cases cited *supra.* The few unnotified shareholders whose complaint we are now considering were investing shareholders, and we consider the

action taken at the meeting of April 2nd, 1928, voidable upon their complaint, and therefore now to be treated as void.

There is also a borrower intervening and complaining of the action taken at the meeting of April 2nd, because of lack of the statutory notice, and while it has become unnecessary to consider the effect of his complaint on that meeting, it is necessary to consider it, and to consider the legal position of borrowers in this business arrangement generally, for possible bearing on action taken subsequently by the contending factions. Apparently neither faction treated these as coming within the class of voters entitled to vote at stockholders' meetings, at least until after the litigation had advanced to a later stage. The by-laws do not distinguish between investing stockholders and borrowers, but provide that, "at all meetings of the stockholders, each member who is not in arrears in the payment of dues shall be allowed one vote for each share held by him, and five members holding unredeemed stock shall constitute a quorum to transact business." And, applying that provision, it is contended that the borrowers, too, are members to the extent of the stock to which they subscribe, and as such are entitled to vote at meetings, and therefore are entitled to equal notice of meetings. Section 169 of article 23 of the Code, applicable to building associations especially, and to borrowing members whose shares, subscribed and pledged by them, are redeemed by the associations, provides that "the member or members of such corporation so redeeming their said share or shares of stock shall cease to be stockholders, and shall not be entitled to vote at any meeting of such corporations held for the purpose of electing directors or for any other purpose." And this corporation has the charter of a building association, and its special act of 1910, chapter 242, provides, as has been seen, that it shall be subject to all the laws made and provided with reference to building and homestead associations. And a first question at this point is whether, assuming this to be a building association, the provision in the by-laws is to prevail to give borrowers votes at the meetings notwithstanding the statutory provision to the contrary. That it is to prevail,

is argued on the basis of a clause in the special act of 1910, section 1, "that, in addition to the powers possessed by it under the certificate of incorporation and by-laws, which are hereby ratified and confirmed," the corporation shall have the further powers given. That ratifying clause is somewhat ambiguous, but this court is of opinion that, in view of the provision in section 3, keeping the corporation subject to all the laws made and provided with reference to building and homestead associations, and in view of the purpose sought to be accomplished in the special act, it would not be permissible to construe the ratifying clause as providing special statutory foundation to any and every provision in the by-laws which might be at variance with the general statutes, and that the by-law now being considered could not be regarded as intended to prevail over the statutes. The special act had a limited purpose in view. As stated in a preamble, it was to enable the corporation "to more securely indemnify its members from loss," and "to turn over to the free shareholders the security given by the borrowing members in order that each may be secure and to act as guarantor of all such securities." And it was following this recital of purposes that section 1 provided "that in addition to the powers possessed by it under the certificate of incorporation and by-laws, which are hereby ratified and confirmed," the corporation should have the further powers. Construing the intention, as we must, to be such as would appear to the legislators from the words and context, together with the subsequent provisions, we hold the ratification of by-laws to be confined to those which touch upon the powers of the corporation, and that, still assuming this to be a building association, and subject to the statutes concerning such associations, the borrowers were not entitled to notice of the meetings of shareholders, and the meetings here discussed were not invalid for want of notice to those borrowers.

But it is denied that this association can properly be treated as a building association, and the rights of its borrowers be settled by statutes concerning building associations especially. It is argued by Mr. Baker that the business of

acting as trustee to secure bonds in the hands of third parties, as authorized and carried on under the special act of 1910, is so far different from that of a building association that the corporation itself must be treated as coming rather under the statutes governing corporations generally, and that, therefore, the general requirement, in section 19 of article 23 of the Code, of notice to each shareholder or member of a corporation, applies to meetings of shareholders of this corporation. We need not dwell upon the question whether the act of 1910 authorizes a business which is not that of a building association or on the difficulty of excepting from the laws governing building associations a corporation which by special act is expressly kept subject to those laws. It seems more to the purpose here to observe that the borrowers in this business arrangement are not such persons as the general statutes describe or intend as stockholders. As these borrowers have no interest in profits of its business, their only relation to the corporation is that of debtors. *Williar v. Balto. Butchers' Loan Assn.,* 45 Md. 546, 561; *O'Sullivan v. Traders, etc. Assn.,* 107 Md. 55, 60; *Armstrong v. Assn.,* 15 App. D. C. 1, 12; *Berlche v. Equitable Loan, etc. Assn.,* 147 Mo. 343, 358, 359; *Endlich, Building Associations* (2nd Ed.), sec. 122. And if the bonds are in the hands of third persons, the borrowers are not even debtors of the corporation; the corporation is only an intermediary, trustee, or depositary for them. If they are to be treated as stockholders within the ordinary meaning of the law, then mere debtors would in this instance have voting control over the affairs of the trustee and the funds paid to it as a stakeholder to pay their creditors. They would have voting control over a corporation in whose affairs they have no interest at all, unless it be to control the funds which they are supposed to have paid, out of their control, for the benefit of others. Persons in that relation are not what the statute, article 23, section 17, refers to as shareholders of corporations, however they may be called elsewhere. It is plain, we assume, that the application of a statute cannot, by a strange use of its names or descriptions, be extended outside the legislative meaning or purpose. *State*

*v. Boyd,* 2 G. & J. 365, 374; *American Casualty Insurance Co.'s Case,* 82 Md. 535, 566; *Commercial Bldg. & Loan Assn. v. Mackenzie,* 85 Md. 132. And in our opinion we cannot force this statute to follow the use made of the description of shareholder here, and apply it to require notice of shareholders' meetings to be given to the borrowers.

The right of some of those present at the meeting of April 2nd, 1928, to vote as stockholders at any meeting is questioned in the case. It is objected that the subscription of Mr. John F. Steinmetz, who had procured large contributions to the funds of the corporation, did not appear as accepted in any authorized entry on the minutes of the corporation; but, as it is not disputed that Mr. Steinmetz paid the money into the corporation and was subsequently treated as a shareholder by the officers, we see no force in that objection. *Handley v. Stutz,* 139 U. S. 417, 423. To Mr. Supplee's subscriptions it is objected that they were procured and accepted upon Mr. Supplee's agreement with Mr. Baker to vote the stock in accordance with Mr. Baker's wishes or interests, and that Mr. Supplee has not abided by that agreement. But taking that to be true, Mr. Supplee's departure from such an agreement with another stockholder, or an officer, would have no effect on his relation with the corporation, or his right to vote. It would have nothing to do with the validity of the subscription.

In view of the attack on the validity of the action at the meeting of April 2nd, 1928, the stockholders supporting that action caused another special meeting of stockholders to be called by the secretary for April 25th, 1928, and gave full statutory notice to each investing stockholder. And at the meeting it was voted that the action taken on April 2nd be rescinded, and again a board of directors not in accord with the wishes of Mr. Baker's faction was selected. Several additional objections are made to this meeting. The request for it was signed by more than two-thirds of the investing stockholders as they had stood on the books of the corporation on April 2nd. A by-law of the corporation provided that special stockholders' meetings might be called for

any purpose by the president or three of the board of directors, or on the request in writing of two-thirds of the stockholders; and it is argued that, as the by-laws throughout include borrowers among the stockholders, they must be counted in ascertaining the proportion of stockholders making the request. Even if that by-law should be taken as controlling, there would be a serious question whether it could properly be construed to include persons standing in the position of borrowers in the business arrangement as now developed, persons not in the position of borrowing members of a building association, but mere debtors to third parties. And if the by-law could be so construed, there would still be a question whether it would meet the required test of reasonableness when so applied. *Mottu v. Primrose,* 23 Md. 482, 499; *France, Corporation Law* (2nd Ed.), 95. But in the opinion of this court the statute, section 20 of article 23 of the Code, is the governing law. As has already been explained, this court is of opinion that the special act of 1910 did not give a statutory ratification and foundation to by-laws other than those touching upon the powers of the corporation, and, according to a well-known principle, a statute governing the same subject prevails over a by-law. *Darrin v. Hoff,* 99 Md. 491, 499. And, for reasons already stated, we find that these borrowers are not such as the statute refers to as stockholders of a corporation. Therefore, the meeting of April 25th, 1928, was not improperly called because the request was not signed by the requisite fraction of investors and borrowers together.

A second objection to that meeting, and perhaps the principal one, is based upon a disregard, in calling it, of an issue of 3,500 shares of stock to Mr. Baker by the older board of directors, on April 10th, 1928. After the meeting of stockholders of April 2nd, and the election of directors now attacked, Mr. Baker, on April 7th, called the older directors together, and made a proposal that stock to this amount, which would enable the Baker faction to outvote the other investing stockholders, should be issued to him upon a special arrangement for payment, Mr. Baker to convey to the asso-

ciation an interest in land owned by him to be sold for payment of part of the price of the stock, the association to open on its books pending the sale a credit to him of $10,000 for five years. And this proposal was accepted by the older board at a later meeting on April 10th, and the stock was issued. This stock was, of course, not represented in the call for the special meeting of stockholders on April 25th, and, if it was validly issued, its omission left less than the required amount of stock to make the call. But we conclude that it was not validly issued. The by-laws which control the action of the board of directors provide only for payments for stock in money, and the extraordinary arrangement made for payments on this stock is unwarranted. The class of stock subscribed for is, under the by-laws, to mature in twenty years or less, and the weekly dues on it are ten cents a share, or by the month forty-four cents—all following the forms of a building association. Money in some amount, and nothing else, is required in payment. But this plan was abandoned in entering the subscription. No money was paid, none was to be paid at present; a credit of $10,000 was intended to pay dues in advance in the lump. The interest in real estate conveyed would, presumably, pay part or all of the value of the stock eventually; but it would not pay it as required. It may be that the corporation is adequately secured in a right to ultimate payment, and that the irregularity may not involve any money loss to the corporation. But such a departure from the authority of the by-laws, especially when it is not one for the benefit and advantage of the whole corporation, but solely to gain control for one portion of stockholders in a factional contest, cannot be disregarded against the protest of the other stockholders. An issue of stock entirely for the separate benefit of the directors and against the interests of other stockholders is a violation of the trust confided in the directors. There is, indeed, a question whether the issue solely for strategic advantage of Mr. Baker in the contest could be upheld even if it had proceeded in strict accordance with the by-laws, for the purpose of an issue by the directors must be within the

purposes entrusted to them on behalf of the stockholders as a whole. See review of decisions in 52 *A. L. R.* 235, etc. The by-laws of this corporation provide a broad power for issuing stock by the directors; as they are almost altogether by-laws for an ordinary building association, they contemplate the issue of stock by the directors as part of the regular business of the corporation. But the acknowledged purpose of this issue was to lodge control in the Baker faction, and that only, not to raise capital needed for the corporation, or in the course of its business of dealing with borrowers. See *Luther v. Luther Co.*, 118 Wis. 112, 113; *Elliott v. Baker*, 194 Mass. 518, 523; *Punt v. Symons & Co., Ltd.* (1903), 2 Ch. 506, 515. We hold the issue of the 3,500 shares of stock to Mr. Baker invalid. And it results that there was no defect in the call of the special stockholders' meeting of April 25th, 1928, because of the omission of this stock from the request for the call.

It follows from the conclusions stated that the special stockholders' meeting held on April 25th, 1928, was, in the opinion of this court, a valid meeting, and that the directors elected at that meeting were the duly elected directors of the association. There was testimony submitted after the final decree showing changes in the stock holdings of the faction opposed to Mr. Baker, and in membership on the board elected on April 25th. That fact cannot affect the action of this court in reviewing the decree, but it may require some adaptation by the lower court to the changed membership of the board in passing a new decree in accordance with this opinion. The decree appealed from denied to those supporting the directors elected on April 25th an injunction or injunctions against interference by the opposing faction acting with Mr. Baker, and we find this to be error on the facts as they existed at the date of the decree. The injunctions should have been granted finally.

*Decree reversed with costs to the appellants, and case remanded for decree to be passed in accordance with this opinion.*