Emil WEISE et al., Appellants,

v.

LAND O' LAKES CREAMERIES, INC., a
Corporation, et al., Appellees.

No. 54314.

Supreme Court of Iowa.

Nov. 11, 1971.

Carroll Wood, Webster City, for appellants.

Brekken & Deppe, Randall, and Harold Jordan, St. Paul, Minn., for appellees.

LeGRAND, Justice.

This is a dispute arising upon the petition of three dissatisfied members of Central Cooperative Turkey Producers, who challenge the proceedings by which the cooperative disposed of all its assets to Land O' Lakes Creameries, Inc., a Minnesota cooperative association. We affirm the trial court except as the decree is modified in Division II hereof.

Central Cooperative Turkey Producers (hereinafter called Central) was a cooperative composed of 97 farmers. It was formed to process and sell turkeys raised by its members. In 1967, some of Central's members became alarmed about the future of the business and initiated an investigation looking toward the possibility of selling or otherwise disposing of the cooperative assets. After a period of negotiation, Land O' Lakes Creameries, Inc. (hereinafter called Land O' Lakes), a much larger cooperative engaged in processing and marketing many farm products, including turkeys, submitted a written proposal offering to take over all of Central's assets and liabilities.

Central's Board of Directors called a meeting of its members for November 28, 1967, to consider this proposal. Notice of the meeting was given by mail on November 15, 1967. A copy of Land O' Lakes' proposal was included as part of the notice. At the meeting the proposal was thoroughly discussed. All three plaintiffs appeared and objected to it. Of Central's 97 members, 65 voted on the proposal, including the three plaintiffs. There were five negative votes. At the same meeting the members appointed three trustees under section 499.47(3), The Code, to put the proposal in effect. A second meeting was held in March of 1968 at the call of the trustees to explain the details of the proposal. The plaintiffs also appeared at this meeting and again voiced objections to various matters there discussed and acted on.

Following the second meeting, Land O' Lakes assumed the operation of Central's plant. It also assumed all Central's obligations and took possession of all its assets. After formal transfer of the assets had been accomplished in the spring of 1968, Central was dissolved under section 499.47, The Code.

Among other things Land O' Lakes paid off all the original membership fees of the members of Central amounting to $9700.00. It paid all of Central's debts in the amount of $927,294.18, and it paid the members $82,365.75 in cash for items other than revolving fund credits; it also invested approximately $60,000 in improvements to Central's plant and equipment.

This action was started on November 20, 1968. Disregarding one division of the petition which was abandoned at trial, plaintiffs asked the following relief:

1. That the merger be set aside and invalidated and that the action of the membership at the meeting of November 28, 1967, be declared a nullity on the ground that notice of the meeting was not given as required by section 491.104, The Code.

2. That judgment be rendered for each of the three plaintiffs in the amounts due them respectively from Central's revolving fund.

3. That Central's loss for 1967 in the amount of $106,667.82 be charged solely against operations for that year, in which plaintiffs did not participate, rather than prorated against prior years as well, which decreases the amount of plaintiffs' revolving fund credits.

■ This is an equitable matter reviewable here do novo.

I. Plaintiffs urge only one ground for demanding that the plan approved by Central's members at the meeting of November 28, 1967, be invalidated. They say they were not given 20 days notice of the meeting as section 491.104, The Code, directs.

This presupposes the proceeding in question was a merger or consolidation under chapter 491 rather than a sale followed by dissolution of the cooperative as provided in section 499.47, The Code.

The trial court expressed uncertainty as to which chapter controlled, but found it unnecessary to decide the point. For reasons stated in Division II hereof we hold the transaction must be considered as a sale, not a merger. However, we agree that conclusion is unimportant to a resolution of the issue concerning the validity of the November 28th meeting.

Plaintiffs complain the notice of that meeting was fatally defective. It was given on November 15—thirteen days before the meeting date. If this were considered as a merger or consolidation, they would be entitled to 20 days notice (section 491.104). If it is governed by chapter 499, they need have only 10 days notice.

We have already noted we believe chapter 499 is the operative statute and no one asserts the notice given was not a reasonable one under section 499.27. However, we believe there is an even stronger reason why plaintiffs cannot prevail on the notice issue.

Even if we accept the premise that the notice was inadequate, plaintiffs have waived their right to object.

■ It is generally held attendance at and participation in a meeting without objection waives any defect in the notice. 5 Fletcher Cyclopedia Corporations (Perm.Ed.) section 2011, page 67; 18 C.J. S. Corporations § 544f, page 1232; 19 Am.Jur.2d, Corporations, section 615, page 135; Camp v. Shannon, 162 Texas 515, 519, 348 S.W.2d 517, 520 (1961); First Mortgage Bond Homestead Assn., Inc. v. Baker, Court of App., 157 Md. 309, 145 A. 876, 878 (1929); Kearneysville Creamery Co. v. American Creamery Co., 103 W.Va. 259, 261, 137 S.E. 217, 218, 51 A.L.R. 938, 940 (Ct.App.1927).

All three of these plaintiffs attended and participated in the meeting. They voted on the proposal which they now seek to set aside. At no time—until now—was any protest made as to the inadequacy of the notice. We believe they are now precluded from objecting.

■ The trial court reached this conclusion by holding plaintiffs guilty of laches in postponing any attack on the meeting until Land O' Lakes had expended over a million dollars in reliance on its validity. Plaintiffs counter by insisting laches was not set up as a defense and cannot therefore be relied on. 30A C.J.S. Equity § 132, page 99; Keller v. Harrison, 151 Iowa 320, 324, 128 N.W. 851, 853 (1910); In re

Trust of Lunt, 235 Iowa 62, 78, 16 N.W.2d 25, 34 (1944).

■ While this correctly states our law, delay in filing suit under these circumstances may be taken into consideration on the question of plaintiffs' right to raise this issue. Failure to act within a reasonable time is taken as a ratification of the proceedings which might otherwise be objected to. 19 Am.Jur.2d, section 616, page 136; 5 Fletcher Cyclopedia Corporations (Perm.Ed.), section 2011, pages 75–76.

■ We understand the trial court's ruling on this matter not as holding laches had been established as an affirmative defense but simply as an application of the above rule. We agree that after plaintiffs sat by while Land O' Lakes put into effect the very plan plaintiffs sought to block; after they remained quiet while Land O' Lakes took over the operation of Central at substantial expense and change in business procedures; after they permitted Land O' Lakes to alter its position on the assumption the proceedings were valid— after all this, a court of equity should not lend its help in setting aside the proposal adopted at that meeting and subsequently put into effect. Rather than doing equity, such a result would be manifestly inequitable. That we are not helpless to avoid such an unfair decree, see Miller Oil Co. v. Treasurer of State, 252 Iowa 1058, 1963, 109 N.W.2d 610, 613 (1961); Thomas v. Cedar Falls, 223 Iowa 229, 239, 272 N.W. 79, 83, 84 (1937); 27 Am.Jur.2d, Equity, section 102, page 623, section 107, page 628.

For the reasons stated we hold plaintiffs have forfeited any right to rely on defective notice, and we affirm the decision of the trial court that the action taken at the meeting of November 28, 1967, is valid.

II. We turn now to that part of plaintiffs' appeal which asks immediate payment of the amounts the trial court found due from revolving fund credits. The decree fixes these sums, which were also established as liens on Central's assets in the hands of Land O' Lakes, as follows:

| | |
|---|---|
| Emil Weise | $ 7880.97 |
| Kenneth Vaubel | $ 868.47 |
| Delmar Hill | $10,033.12 |

There is no appeal from this determination and it is therefore a finality. Dispute arises, however, as to how payment should be made. Plaintiffs insist they are entitled to their money now while Land O' Lakes has scheduled payment on a deferred basis at the discretion of its Board of Directors.

This problem promptly returns us to the argument over whether this is a merger and consolidation under chapter 491 or a dissolution under chapter 499. It also places plaintiffs in the anomalous position of contending, in one place, for a finding which would, in another division of their petition, defeat them.

■ Plaintiffs insist this is a merger. If so, we agree with the trial court that they are entitled to their revolving fund credits at the discretion of the board of directors. The right to *immediate* payment depends on maturity of the obligation. Sections 499.33–499.35, The Code.

Section 499.35 expressly states the revolving fund credits (or patronage dividends) shall not mature "until the dissolution or liquidation of the association." If plaintiffs are to succeed in their demand, therefore, it must be on the strength of a dissolution of Central following a sale of its assets. In case of merger, we believe the trial court correctly found the right to such payment would simply follow the fund to Land O' Lakes and be subject to the terms of section 499.33.

We cannot escape the conclusion that the transaction in question was simply a sale

of all assets to Land O' Lakes; it was not a merger.

■ We say this because there was no authority for a merger. We cannot accept the argument that chapter 491 (Corporations for Pecuniary Profit) controls this transaction entered into by a cooperative association organized and operated under chapter 499. Although co-operatives may now merge (sections 499.61–499.71, The Code), there was no statutory authority for such action when these events took place. We have held such authority is necessary and that it must be clear and unequivocal. Rath v. Rath Packing Company, 257 Iowa 1277, 1286, 136 N.W.2d 410, 415 (1965); 19 Am.Jur.2d, Corporations, section 1494, page 876; 15 Fletcher Cyclopedia Corporations, (Perm.Ed.) section 7048, page 32.

■ Nor can this be a de facto merger, as plaintiffs argue, since there was no statute under which it could have legally entered into a merger. There can be no de facto merger unless first there could have been a de jure one. 19 C.J.S. Corporations § 1623, page 1384, 18 Am.Jur.2d, Corporations, section 51, page 595; 15 Fletcher Cyclopedia Corporations, section 7153, page 247; Baum v. Baum Holding Co., 158 Neb. 197, 62 N.W.2d 864, 868 (1954); First Title & Securities Co. v. U. S. Gypsum Co., 211 Iowa 1019, 1025, 233 N.W. 137, 140 (1930); Wilkin Grain Co. v. Monroe Co. Co-op Assn., 208 Iowa 921, 927, 223 N.W. 899, 902 (1929). (Opinion modified on other matter at 225 N.W. 868).

Incidentally the fact that the legislature felt it necessary to specifically authorize merger and consolidation by cooperatives by the enactment of sections 499.61–499.71 in 1970 is sufficient answer to plaintiffs' argument that such power was impliedly granted by section 499.7(7). We do not believe there is any such implication to be found there.

■ Since this could not be a merger, we hold it must have been a sale followed by a dissolution of Central. It is apparent from the record that both Land O' Lakes and Central so considered it. There was no effort to comply with the provisions of chapter 491. Every action taken was in conformance with chapter 499.

The notice referred to a sale and dissolution; trustees were appointed as provided in section 499.47(3); the notice of 13 days does not comply with chapter 491 but it more than meets the requirements of section 499.27.

The finding that this is a sale under chapter 499 dictates our further conclusion that plaintiffs are entitled to payment of their revolving fund credits upon dissolution of the corporation. The provisions of sections 499.47 and 499.48 require that result.

Sections 499.30–499.33 provide for a revolving fund and deferred patronage dividends. Section 499.48 directs that upon liquidation, assets shall be applied first to pay the expense of liquidation, then the debts, and then to "pay any deferred patronage dividends or certificates issued therefor."

The revolving fund here was somewhat different from the usual one. Ordinarily a portion of the profits goes to make up the revolving fund. Here it was built up by an arbitrary deduction of one cent per pound of all turkeys processed. Regardless of the source of the funds, however, this was a revolving fund under the sections above referred to. Though not identical with deferred patronage dividends, payments from the fund are governed by the same rules.

We hold that upon dissolution of Central, plaintiffs were entitled to payment in cash of the amounts due them from the revolving fund. Section 499.48. To this extent we disagree with the trial court and modify the decree accordingly.

It is possible plaintiffs have received some payments on the amounts due them

during the pendency of this appeal. In that event the amounts shown above should be reduced by the amount of any payments made.

We remand the case to the district court for a determination of the amounts presently due and for entry of judgment in such amounts.

III. The remaining issue deals with the allocation of the 1967 loss in the amount of $106,667.82. Central charged it proportionately against all unpaid revolving fund credits, regardless of the years involved. Plaintiffs insist it should have charged only against those members who delivered turkeys to Central for processing in 1967, the year of the loss. This would increase the amounts due plaintiffs because they did no business with Central in that year.

The trial court held the loss should be borne by all those holding revolving fund credits. We agree this was proper under section 499.48(2), which provides that, in case of dissolution, any deficiency be pro-rated among *all* revolving fund credits. The loss did not occur on 1967 operations alone but was due in part to unfortunate business decisions made in prior years.

There is no equitable way to apportion this loss except by charging it against all members in proportion to their revolving fund credits. This is the result approved by the trial court, and we affirm it.

IV. In summary we hold the action taken by Central at the meeting of November 28, 1967, is valid; that plaintiffs are entitled to payment now of the amounts now due on their revolving fund credits; that this cause is remanded for determination of those amounts; and that plaintiffs must bear their proportionate share of the 1967 loss of $106,667.82.

Modified, affirmed and remanded for further proceedings.

All Justices concur, except UHLEN-HOPP, J., who takes no part.